456 So.2d 436 (1984)
Norman PARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 61512.
Supreme Court of Florida.
September 6, 1984.
*439 Benedict P. Kuehne of Bierman, Sonnett, Beiley, Shohat & Sale, Miami, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson and Carolyn M. Snurkowski, Asst. Attys. Gen., Miami, for appellee.
PER CURIAM.
Parker (defendant) appeals from a judgment of the Eleventh Judicial Circuit, Dade County. The court adjudicated defendant guilty of first-degree murder, four counts of robbery, sexual battery, and unlawful possession of a firearm during the commission of a felony. Defendant was sentenced to death on the first-degree murder count following the jury's recommendation, and to consecutive terms of life imprisonment on the four robbery and one sexual battery counts. Entry of sentence was suspended on the conviction for unlawful possession of a firearm. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentences.
The evidence at trial established that on July 18, 1978, defendant and his partner, Manson, were admitted to a Miami home in order to complete an illegal drug transaction with two male occupants of the home. Soon thereafter, defendant and Manson produced a sawed-off shotgun and a chrome-plated revolver, respectively, and *440 demanded cocaine and money from the two victims. The two victims were forced to surrender jewelry, strip naked, and lie on a bed. Two other occupants, a female and her boyfriend (Chavez), were discovered in another room and also forced to strip naked and surrender jewelry. All four victims were then confined in the same room, on the same bed. Defendant and Manson exchanged weapons and defendant guarded the four victims while Manson searched the home for additional loot. Defendant threatened to kill the victims because he said he had escaped from jail and had nothing to lose. The victims pleaded with defendant and Manson to take what they wanted and leave. Chavez also pleaded with defendant and Manson to leave his girlfriend alone. After a period of time, defendant aimed the revolver at Chavez's back, whereupon Manson handed defendant a pillow. Defendant then shot Chavez through the pillow. The other three victims heard the muffled shot and nothing further from Chavez. Chavez died from a single gunshot wound to the chest. Defendant then committed a sexual battery on the female. Defendant and Manson fled, but were later identified by the surviving victims from a photographic lineup.
On August 24, 1978, defendant shot a man in a Washington, D.C., bar. A bullet from this victim's body was matched with the bullet taken from Chavez's body. Jewelry found in possession of the defendant in D.C. was similar to jewelry taken from the Miami victims. Defendant testified that he had been in D.C. during the summer of 1978, including the day that the Miami murder was committed. Four other defense witnesses testified by deposition that defendant was in D.C. during the summer of 1978 but, on cross examination, were unable to swear defendant was in D.C. during the period, July 17-19, 1978.
During the penalty phase, the evidence showed that defendant had been sentenced previously to life imprisonment in 1967 for a first-degree murder committed in Dade County, Florida, and that he was sentenced to life imprisonment for a second-degree murder committed in D.C. in August, 1978.

GUILT PHASE
Defendant raises eight points on appeal. The first of these points concerns two statements that he gave to the police and which he contends should have been suppressed. Following his arrest for the shooting in D.C., defendant confessed. The only relevance of this statement to the guilt phase of the trial in Florida was that a bullet taken from the body of the D.C. victim was matched to the bullet taken from the body of Chavez. Although defendant and his counsel were furnished copies of this statement several years before the trial and were informed of the state's intent to use the relevant item of information several weeks before the trial, the motion to suppress was not made until the trial was in progress. The trial court denied the motion as untimely, but conducted a hearing for purposes of appellate review. We agree that the motion was untimely, particularly since the trial court had discussed the possible prejudicial effect of admitting evidence from the D.C. shooting and had ruled, prior to trial, that it would limit the evidence to the fact of the shooting only. The defense raised no objection at that time. Fla.R.Crim.P. 3.190(i)(2); Savoie v. State, 422 So.2d 308 (Fla. 1982); Davis v. State, 226 So.2d 257 (Fla. 2d DCA 1969). Even if we were to consider the issue, the evidence shows that the statement was voluntary. The testimony of the interrogating officer shows that defendant was promised nothing in return for the statement, voluntarily waived his Miranda[1] rights, did not appear to be in pain or intoxicated, and did not ask to see a doctor. Defendant testified that he understood his rights and what he was doing.
Defendant was also interviewed by two policemen from Metro-Dade County on August 29, 1978, while in the custody of the D.C. police, awaiting trial for the D.C. murder. While being taken to the interview *441 room, defendant told the D.C. policeman that he wanted to see the attorney appointed to defend him on the D.C. murder charge. The D.C. policeman delivered defendant to the interview room without obtaining his counsel. There, the Dade County officers identified themselves as Metro-Dade policemen and defendant signed a waiver of his Miranda rights, agreeing to talk to them. During this interview, defendant stated that he did not know Manson, and that jewelry he was wearing was given to him by his girl friend. Defendant also surrendered the jewelry to the Metro-Dade policemen. Defendant's pretrial motion to suppress the statement was denied. At trial, one of the Dade County robbery victims testified, without objection, that certain items of the surrendered jewelry were taken from him during the July 18, 1978, episode. A Metro-Dade policeman testified, without objection, that the jewelry was surrendered to him by defendant in D.C. on August 29, 1978. Later, during the case for the defense, defendant testified that he knew Manson and had received the jewelry when Manson visited him in D.C. in late July 1978, after the Dade County crimes. On cross examination, the prosecution elicited from defendant, without objection, that he had told the Metro-Dade police that he did not know Manson and that he had received the jewelry from his girl friend.
In his brief defendant urges that Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), mandates that the statement be suppressed in that he requested counsel prior to the interview. Since the parties submitted their briefs, the United States Supreme Court has held that Edwards will not be retroactively applied to interrogations occurring before Edwards issued.[2]Solem v. Stumes, ___ U.S. ___, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). At oral argument, defendant conceded that his Edwards argument was no longer viable but argued nevertheless that his Miranda rights were violated. We disagree. First, defendant did not object at trial to the introduction of the three items of information and, thus, has not properly preserved the issue for appeal. Routly v. State, 440 So.2d 1257 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984); DeLuca v. State, 384 So.2d 212 (Fla. 4th DCA), review denied, 389 So.2d 1108 (Fla. 1980); Jones v. State, 360 So.2d 1293 (Fla. 3d DCA 1978). Second, even if the merits are reached, the totality of circumstances surrounding the interview clearly show that defendant voluntarily waived his Miranda rights and agreed to talk to the Metro-Dade police without his counsel present. Defendant claims that he did not know the Metro-Dade police wished to talk with him about the July, 1978, Dade County crimes and thought they only wanted to talk about his escape from the life imprisonment sentence he was serving in Florida. This contention is belied by his testimony at trial that he knew the D.C. police had received a detainer from Florida on the July 18, 1978, crimes. Thus, after defendant was introduced to the Metro-Dade police in the interview room, he had every reason to believe they were there in connection with the detainer. Third, the impeachment of defendant on cross examination by eliciting contradictory statements on whether he knew Manson and where he received the jewelry was proper to attack his credibility even if the statement itself had been inadmissible as direct evidence. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 *442 (1971); Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).
Defendant's second point is that he was denied his sixth and fourteenth amendment rights to a fair trial because the statute governing excusals from the jury venire excuses expectant mothers and mothers not employed full time, with children under fifteen years of age. The trial court conducted a pretrial hearing on defendant's motion raising this issue and denied the motion. Defendant has not furnished us with a transcript of this hearing and we are unable to consider the trial court's ruling. McMann v. State, 55 So.2d 538 (Fla. 1951). In any event, we have previously ruled contrary to defendant's position. Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982); McArthur v. State, 351 So.2d 972 (Fla. 1977). Defendant's reliance on Alachua County Court Executive v. Anthony, 418 So.2d 264 (Fla. 1982), is misplaced, because that case concerned denial of equal protection to male parents not employed full time with children under fifteen years of age.[3]
Defendant's third point is that the trial court abused its discretion in refusing his request for additional peremptory challenges and in denying his challenges for cause on two members of the jury venire, both of whom he later peremptorily challenged. All of the charges arose from a single incident, and defendant was given ten peremptory challenges, which he exhausted. He claims ten challenges were inadequate because of the seriousness of the case, the nature of the multi-count charges, and the racial mixture of the jury venire. It is well settled that the trial judge has discretion to grant or deny additional peremptory challenges. Defendant has not shown any abuse of discretion in denying his request. Johnson v. State, 222 So.2d 191 (Fla. 1969). Defendant's arguments on the denial of his challenges for cause are also meritless. The court reserved its ruling on the first challenged juror while voir dire continued. During this voir dire, defendant's counsel indicated satisfaction with the juror's responses and did not request a ruling on the challenge for cause following the voir dire. The juror was later peremptorily challenged, but defendant has not properly preserved the issue of challenge for cause. Routly; DeLuca; Jones. The second challenged juror acknowledged that her home had been recently burglarized and that she feared crime in the community but would nevertheless follow the directions of the court and render a verdict based on the evidence. We see no error in denying this challenge for cause. Fitzpatrick v. State, 437 So.2d 1072 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984).
Defendant's fourth point is that the prosecution should not have been permitted to introduce defendant's admission that he shot a man in D.C. when an independent corpus delicti had not been established. This point is particularly meritless. During the guilt phase, at defendant's behest, the trial court limited the evidence concerning the D.C. shooting to the defendant's admission of the shooting. This admission was relevant because the bullet from the D.C. shooting was linked to the bullet from Chavez's body. Defendant was not on trial for the D.C. murder. Proving the corpus delicti was not only irrelevant, it might also have been unduly prejudicial. Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981).
Defendant's fifth point that the circumstantial evidence was insufficient to support his conviction is meritless. There was ample evidence to support the jury's verdict, including three eyewitnesses who testified that defendant committed the crimes for which he was convicted. Heiney v. State, 447 So.2d 210 (Fla. 1984).
Defendant's sixth point is that he was denied a fair trial by the introduction *443 of evidence that he used aliases in D.C., suggesting that he was a criminal. This point is also meritless. Defendant's counsel advised the jury during opening argument that defense witnesses would testify that they knew defendant under another name and that he had been in D.C. at the time of the Dade County crime. Other references to false names used by defendant were introduced without objections. The objection, when made, was untimely and the issue has not been preserved for appeal. Routly; DeLuca; Jones. Further, on the merits, the evidence was relevant to the identification of defendant as the man who admitted shooting the D.C. victim with the bullet linked to the Chavez murder. Ruffin.
Defendant's seventh point is that there was a break in the chain of custody of the bullet taken from Chavez's body and that this evidence should not have been admitted. We disagree. There was testimony from a doctor that he initialed the bullet taken from Chavez's body, that he removed no other bullets from other bodies on that date, that the bullet from Chavez's body was given to the police, and that the bullet in evidence appeared to be the same bullet removed from Chavez's body. There was also testimony from a firearms expert that on the following day he received and examined a bullet in a container marked as containing a bullet taken from Chavez's body and that the bullet which he received and examined was the bullet in evidence. Nothing in the record shows evidence of tampering. The judge did not abuse her discretion in permitting the introduction of the bullet. Peek v. State, 395 So.2d 492, 495 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981).

PENALTY PHASE
The jury recommended that the death penalty be imposed. The trial judge entered a written order finding five aggravating factors and no mitigating factors. The five aggravating factors were that the capital felony was committed while defendant was under a sentence of imprisonment, that the defendant had been previously convicted of another capital offense or felony involving the use or threat of violence to some person, that the capital felony was committed while engaged in the commission of, or attempt to commit, or the flight after committing a sexual battery, that the capital felony was committed for the purpose of financial or pecuniary gain, and that the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
Defendant claims that the prosecutor emotionally inflamed the jury by referring to his previous life sentence for a murder committed in 1967 and to the life sentence imposed for the D.C. murder following the commission of the present murder, and concluding that "if life meant life" both Chavez and the D.C. victim would be alive today. At trial, defendant objected on the ground that the prosecutor was arguing outside the evidence. The trial judge properly overruled the objection because both convictions were obtained prior to the sentencing here and were properly introduced as aggravating factors. § 921.141(5)(b), Fla. Stat. (1977). Defendant's argument on appeal that the jury was emotionally inflamed was not presented at trial and, thus, was not properly preserved for appeal. § 90.104(1)(a), Fla. Stat. (1981); United States Fire Insurance Co. v. Dickerson, 82 Fla. 442, 90 So. 613 (1921). Even had it been preserved, it would have no merit. The record shows that defendant was sentenced to life imprisonment for first-degree murder in 1967, and later murdered two additional persons. Under these circumstances, it is manifestly obvious that "if life meant life" the defendant would not have murdered these two additional victims. The prosecutor did not predict that the defendant would murder again if sentenced to life imprisonment and paroled after twenty-five years. This latter argument we have condemned in Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). See also Harris v. *444 State, 438 So.2d 787 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984).
Defendant argues that the trial judge erred in denying requested jury instructions. There was no error; the requested instructions were encompassed within the standard jury instructions which were properly given. Jones v. State, 411 So.2d 165 (Fla.), cert. denied, 459 U.S. 891, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982).
Defendant also argues that the trial judge erred in finding that the murder was cold, calculated, and premeditated. We disagree. The evidence shows that the murder victim had been pleading with defendant not to harm his girl friend and, at the time he was murdered, was lying naked, face down, on a bed. Before killing the victim by a gunshot blast into his back, defendant accepted a pillow from his partner in order to muffle the shot. It is clear beyond any reasonable doubt that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, in order to prevent any interference by the murder victim with the sexual battery which immediately followed the murder.
Defendant's argument that there was no evidence that he was under a sentence of imprisonment at the time of the murder is meritless. The record shows that on August 10, 1967, defendant was adjudged guilty of first-degree murder and sentenced to life imprisonment. No evidence was introduced relative to a pardon or other legitimate termination of that incarceration nor did the defendant make any such argument.
In addition to reviewing the specific points raised by defendant, we have also reviewed the record pursuant to Florida Rule of Appellate Procedure 9.130(f) and conclude that a new trial is not required.
It is therefore our opinion that the judgments and sentences should be affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] It is not clear that Edwards would be applicable in any event. Defendant's request for his D.C. attorney was made to a D.C. policeman before the defendant met the Metro-Dade County policeman and became aware they were investigating an unrelated crime. The particular facts and circumstances suggest that defendant knowingly and intelligently waived his right to counsel. Delap v. State, 440 So.2d 1242 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984); Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980); Tuff v. State, 408 So.2d 724 (Fla. 1st DCA), review denied, 413 So.2d 877 (Fla. 1982); Miller v. State, 403 So.2d 1017 (Fla. 5th DCA 1981), review denied, 412 So.2d 468 (Fla. 1982).
[3] Section 40.013(4), Florida Statutes (1979), has since been amended to eliminate the gender-based classification. Ch. 83-210, § 1, Laws of Fla. (1983).