476 So.2d 1253 (1985)
Harold W. HOOPER, Appellant,
v.
STATE of Florida, Appellee.
No. 64299.
Supreme Court of Florida.
August 15, 1985.
Rehearing Denied November 13, 1985.
*1254 Michael E. Allen, Public Defender, and David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Thomas H. Bateman, III, Asst. Atty. Gen., Tallahassee, for appellee.
ALDERMAN, Judge.
Harold Hooper appeals his convictions for first-degree murder and for attempted second-degree murder and his death sentences. Finding no reversible error, we affirm the convictions and sentences.
Defendant had been living with his brother, James Hooper, and his family for several months. On the morning of August 20, 1982, James returned to his apartment where he found the mutilated body of his wife, Kathaleen Hooper, whose throat had been slashed twice, severing her jugular veins and whose arms and hands were cut with what appeared to be defensive wounds. Her fingers on one hand were almost severed from attempting to grab the knife with which she was being stabbed. Her body was found near the front door of the apartment. The body of his nine-year-old daughter, Rhonda Hooper, was found in the master bedroom between the bed and the dresser. She had been strangled with a garrote made out of a white dish towel, and her neck had been slashed. His twelve-year-old son, James Scott Hooper, was alive but had been beaten severely on his head by a hard object, causing his skull to be crushed in several areas. James Scott testified that he was awakened on the night of August 19, 1982, and realized that his uncle, Harold Hooper, was severely beating him on the head with a hard object held in a pillow case, causing him to sustain a fractured skull. Testimony revealed that a slight deviation from the location of the blows to his head could have been fatal. When his father returned home the next morning, James Scott, in response to his father's inquiries, told him that defendant had done all this. James Scott testified that he did not smell any alcohol on the person attacking him. He also told the rescue unit that Harold had hit him. The rescue squad stated that James Scott was coherent and oriented.
Immediately following these murders, defendant left the state. A week later, he was arrested in Ohio, at which time he attempted to commit suicide by slashing his wrists because, he stated, he did not want to go back to jail. His defense at trial was explicit and detailed. He testified that on August 19, 1982, after having some drinks during the afternoon and evening hours, he drove around the city. He, however, did not testify that he was intoxicated. That night, he returned to his brother's apartment. He had no key to the apartment and, finding the door to the apartment locked and being unable to arouse James Scott by throwing pebbles at his window, he gained entry through an unlocked, sliding glass door after climbing up onto the sun porch. He testified that he encountered a 5-foot 10-inch, 190-pound, male stranger in the apartment who struck him in the head and knocked him down. Defendant at that time weighed 325 pounds and is 6 feet 8 inches tall. He gave a detailed description of this alleged assailant to the police. He said that he then found the victims and checked their pulses and that he left, intending to go to the convenience *1255 store several blocks away to get help. He left the city without reporting the murders, asserting that he suffered a black out and loss of memory after striking a tree as he left the apartment complex. He stated that he drove to Cincinatti, Ohio, and stayed at the Salvation Army. His entire defense rested on his claim that someone else had committed these murders.
Blood consistent with defendant's blood type, which was of a type distinctive from the victims or his brother, was found on the bed clothing near the murdered child, on her night shirt, and on the ligature around her neck. His distinctive blood type was also found on the tee shirt worn by James Scott, as well as several other places in the apartment. Defendant was convicted for first-degree murder of his sister-in-law, Kathaleen Hooper, first-degree murder of his nine-year-old niece, Rhonda Hooper, and attempted second-degree murder of his twelve-year-old nephew, James Scott Hooper. The jury recommended sentences of death for the murder of Kathaleen and for the murder of Rhonda. The trial court imposed two death sentences to run consecutively and imposed a fifteen-year sentence for the attempted second-degree murder of James Scott.
Defendant challenges his convictions on several grounds. He argues that the trial court reversibly erred in denying his request not to be present during the individual voir dire of prospective jurors in the trial court's chambers. He asserted at trial that due to his large size, the jurors may be intimidated in their responses to questions during voir dire. He contends that although he has the constitutional right to be present, this right is waivable.
The record reflects, and the trial court noted, that the defendant sat immediately to the court's right, that defendant's two trial counsel sat to his immediate right between him and the prospective juror, that the prospective juror sat at the end of the table, and that there were two bailiffs present in the chambers to provide adequate and sufficient protection to any person in there. The trial court denied defendant's request to absent himself because it determined that in weighing the interests of the defendant, his right to be there to observe the prospective jurors outweighed any intimidation a juror may have felt, if any. The trial court determined that if there was any merit to defendant's motion, it was outweighed by defendant's need to be present.
In Francis v. State, 413 So.2d 1175 (Fla. 1982), we reversed defendant's conviction because the court had proceeded with the jury selection process in his absence and because, in the particular factual context of the record, we could not say that the error was harmless. Because he had not voluntarily absented himself from the courtroom, we found it unnecessary to decide whether a defendant may waive his right to be present in a capital case. We emphasized the importance of voir dire and stated:
The exercise of peremptory challenges has been held to be essential to the fairness of a trial by jury and has been described as one of the most important rights secured to a defendant. Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894); Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). It is an arbitrary and capricious right which must be exercised freely to accomplish its purpose. It permits rejection for real or imagined partiality and is often exercised on the basis of sudden impressions and unaccountable prejudices based only on the bare looks and gestures of another or upon a juror's habits and associations. It is sometimes exercised on grounds normally thought irrelevant to legal proceedings or official action, such as the race, religion, nationality, occupation or affiliations of people summoned for jury duty. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). In the present case, we are unable to assess the extent of prejudice, if any, Francis sustained by not being present to consult with his counsel during the time his peremptory *1256 challenges were exercised. Accordingly, we conclude that his involuntary absence without waiver by consent or subsequent ratification was reversible error and that Francis is entitled to a new trial.
413 So.2d at 1178-79.
The trial court in the present case, in an effort to protect Hooper's constitutional right to be present at the stages of his trial where fundamental fairness may be thwarted by his absence, denied his request to waive his presence. This request was not denied on the basis that Hooper might not have the right to waive his presence, but rather on the basis of the trial court's weighing the ultimate importance to defendant of his need to be present against his asserted ground for waiver of possible intimidation of prospective jurors. The trial court did not reversibly err in denying defendant's motion to waive his presence. In light of our holding, we need not address the issue of whether a defendant may waive his right to be present at any critical stage of a capital trial.
Relative to the jury selection process, defendant also argues that a particular venireman should have been excluded for cause because he said that he would recommend death if Hooper was found guilty. Reading the entire voir dire of this venireman, we find defendant's claim unsupported by the record. The trial court properly refused to excuse this venireman for cause. Moreover, we find no merit to defendant's contention that the trial court erred in denying his request for additional peremptory challenges. Florida Rule of Criminal Procedure 3.350 provides in pertinent part:
(e) If an indictment or information contains two or more counts or if two or more indictments or informations are consolidated for trial, the defendant shall be allowed the number of peremptory challenges which would be permissible in a single case, but in the interest of justice the judge may use his judicial discretion in extenuating circumstances to grant additional challenges to the accumulate maximum based on the number of charges or cases included when it appears that there is a possibility that the State or the defendant may be prejudiced. The State and the defendant shall be allowed an equal number of challenges.
The trial court allowed thirty peremptory challenges. The trial court has the discretion to grant or deny additional peremptories. Parker v. State, 456 So.2d 436 (Fla. 1984). Defendant has not demonstrated any abuse of the court's discretion.
Furthermore, we find no error in the court's excusal for cause of venireman Musgrove. The trial court has broad discretion in determining the competency of a prospective juror and, in the absence of manifest error, its decision will not be disturbed. Christopher v. State, 407 So.2d 198 (Fla. 1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982). No such error has been demonstrated here. There were many reasons apparent on the record to justify the court's excusal of this venireman.
Defendant next contends that the court erred in denying his requested jury instruction on voluntary intoxication. The trial court denied this instruction because it was totally inconsistent with the defense which defendant presented at trial and because defendant presented no facts which would support a theory that he was intoxicated and unable to formulate the necessary intent to commit the offenses charged. Review of the record supports the trial court's ruling.
Defendant is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support such instructions. Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, 462 U.S. 1145, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). In the present case, however, intoxication was not defendant's theory of defense. The trial court's refusal to give this instruction was not error.
*1257 We also find no merit to defendant's argument that the trial court erred in overruling his objection to a prosecutorial remark during the state's rebuttal argument which defendant characterizes as a golden rule argument. The state argues that this challenged remark was not a "golden rule" argument, but rather was fair comment on the evidence which was invited by defense counsel's attempt to impeach James Hooper. This statement, it urges, was not calculated to appeal to the sympathy of the jury or to have the jury abandon the cold neutrality expected of them. Rather, it was directed to the activities of the victim's husband upon arriving at the scene of the murders to show the jury that his behavior was not inappropriate given the circumstances of finding his wife dead. The trial court, in the exercise of its discretion, controls the comments made in closing arguments, and we have repeatedly held that the trial court's ruling on these matters will not be overturned unless a clear abuse of discretion is shown. Davis v. State, 461 So.2d 67 (Fla. 1984); Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). Evaluating the challenged comment in the context of the closing arguments in this case, we hold that no such showing of abuse of discretion has been made.
We also hold that the trial court properly excluded the testimony of an expert in eyewitness identification. We have previously rejected this assertion in Johnson v. State, 438 So.2d 774 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984), wherein we reiterated that a trial court has wide discretion concerning the admissibility of evidence and the range of subjects about which an expert can testify. We held:
Expert testimony should be excluded when the facts testified to are of such nature as not to require any special knowledge or experience in order for the jury to form its conclusions. Johnson [393 So.2d 1069 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981)]. We hold that a jury is fully capable of assessing a witness' ability to perceive and remember, given the assistance of cross-examination and cautionary instructions, without the aid of expert testimony. We find no abuse of discretion in the trial court's refusal to allow this witness to testify about the reliability of eyewitness identification.
438 So.2d at 777 (footnote omitted).
We have considered defendant's remaining challenges to his convictions that the court erred in sustaining the state's objection to defendant's effort to attack James Scott's character, in restricting his presentation of a defense, and in admitting his statement made at the time of his arrest and during his suicide attempt. We find these arguments to be completely lacking in merit.
In addition to reviewing the record in light of the errors asserted by defendant, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required. Finding no reversible error, we affirm his convictions.
Defendant also challenges his sentences of death imposed after the jury had recommended sentences of death for the murder of Kathaleen and for the murder of Rhonda. The trial court imposed two consecutive death sentences for the first-degree murders. In a detailed sentencing order, the court found as aggravating factors for the murder of Kathaleen that the defendant has been previously convicted of a felony involving the use or threat of violence to some person and that the murder was especially heinous, atrocious, or cruel. Relative to the murder of Rhonda, the trial court found these same two aggravating factors plus two additional circumstances  that the murder of Rhonda was committed for the purpose of avoiding arrest and that the murder was committed in a cold, calculated, premeditated manner without any pretense of moral or legal justification. The trial court found no statutory mitigating circumstances but found as non-statutory mitigating circumstances that defendant *1258 served in the U.S. Army in 1960, that he served in the Salvation Army during the late 1970's, and that he has a present dedication to Christian principles. Specifically with regard to these aggravating factors, the trial court explained:
"1. The defendant has been previously convicted of a felony involving the use or threat of violence to some person.
"FACT: On May 6, 1975, the defendant was charged with the felony offense of sexual battery in Richland County, Ohio. The offense charged was the forceful sexual battery of one Pamela Phillips.
"On February 24, 1976, the defendant was sentenced to an indeterminate term of not less than two years nor more than ten years by Honorable Rex Larson, Judge of Common Pleas Court of Richland County, Ohio.
"FACT: The offense charged and for which the defendant was convicted involved the use of a rope and a knife. A gun was alleged to have been used as well, however, the proof as to the gun was not clear and the Court rejects that version of the facts.
"FACT: The prosecuting attorney, John Allen, from Ohio, who had prosecuted the charge against the defendant in Ohio, appeared at advisory hearing and positively identified him as the Harold William Hooper convicted as set forth above.
"FACT: The Clerk of the Court, Gene Coffey, appeared at advisory hearing with certified copies of the indictment by which defendant was charged and the journal entry of his conviction and sentence.
"FACT: On April 12, 1964, the defendant was charged with the felony offense of Assault With a Dangerous or Deadly Weapon in Richland County, Ohio. The offense charged that the weapon used was a pipe wrench and that defendant had unlawfully assaulted one Quida Taylor with the weapon.
"On April 17, 1964, the defendant entered a plea of guilty to the charge. On April 27, 1964, he was sentenced to an indeterminate term of not less than one year nor more than five years by Honorable James J. Mayer, Judge of the Court of Common Pleas of Richland County, Ohio.
"FACT: The prosecuting attorney, John Allen, was able to identify the defendant from a review of his office file which included a photograph of the defendant.
"FACT: The Clerk of the Court, Gene Coffey, appeared at advisory hearing with certified copies of the Information by which defendant was charged and the Journal Entry of his conviction and sentence.
"FACT: The defendant did not testify to dispute the felonies for which the evidence showed his conviction nor the convictions.
"FACT: The defendant admitted the offenses to Henry D. Bates, on July 7, 1983.
"CONCLUSION: There is an aggravating circumstance under this paragraph as to the murder of Rhonda Kay Hooper because the defendant had previously been convicted of a felony involving the use of violence and a felony involving the threat of the use of violence.
"There is an aggravating circumstance under this paragraph as to the murder of Kathaleen Ruth Hooper because the defendant had previously been convicted of a felony involving the use of violence and a felony involving the threat of the use of violence.
"2. The crime for which the defendant is to be sentenced was committed for the purpose of avoiding arrest or effecting an escape from custody.
"FACT: Kathaleen Ruth Hooper was murdered by the defendant during the late night hours of August 19, 1982 or the early morning hours of the following day.
"FACT: Kathaleen Ruth Hooper and Rhonda Kay Hooper slept together in the same bed in the master bedroom when James Hooper, husband and father, was out of town.
"FACT: James Scott Hooper, son of James and Kathaleen Hooper, slept in his own room.
"FACT: The apartment where the Hoopers lived had not been broken into. The defendant had lived with the Hoopers until *1259 his temporary residence at the Sea Hut Restaurant and was well known to the Hoopers.
"FACT: The evidence proved conclusively that a struggle took place between Kathaleen Hooper and the defendant before she was killed as shown by the following:
"1) Her fingers of one hand which were almost severed.
"2) The other defense wounds on her arms.
"3) Her location close to the front door, a means of escape.
"4) The overturned chair, lamp, and other furnishings.
"5) The slits in the chair indicating stab attempts.
"FACT: The defendant who had temporary residence at the Sea Hut had been in James Scott Hooper's room.
"FACT: Rhonda Kay Hooper's body was found at a location most distant from the entrance to the master bedroom. Her body was almost trapped between the wall and a chest standing near.
"CONCLUSION: It is a reasonable inference that a struggle between Kathaleen Hooper and the defendant took place which was witnessed by the child who had been in bed with her mother. Each had on night clothes. After the struggle and the murder of Kathaleen, the defendant, knowing that Rhonda Kay was a witness, pursued her into her bedroom and killed her so as to eliminate her witness as to his identity as the murderer of her mother. Such inference is bolstered by the savage attack upon James Scott Hooper from fear that young Hooper would have known of his presence after the murders were committed. Additional support is found in defendant's failure to gather his belongings before leaving the state for Ohio. The Court is convinced that Rhonda Kay was murdered with the intent to avoid arrest and detection.
"When the victim of the murder is not a police officer, the proof of the intent to avoid arrest and detection by murdering a possible witness must be very strong before such murder can be considered to be an aggravating circumstance. Riley v. State, 366 So.2d 19, 22 (Fla. 1978) [cert. denied, 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982)]. The proof must show that the dominant motive for murder was the elimination of a witness. White v. State, 403 So.2d 331, 338 (Fla. 1981) [cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983)]. The Court is fully satisfied that these requirements of proof have been met beyond a reasonable doubt as to the murder of Rhonda Kay Hooper.
"There is no aggravating circumstance under this paragraph as to Kathaleen Ruth Hooper.
"There is an aggravating circumstance under this paragraph as to Rhonda Kay Hooper.
"3. The crimes which the defendant committed were especially wicked, evil, atrocious or cruel.
"FACT: Kathaleen Ruth Hooper, was a woman who, from photographs in evidence, appeared to be of average size.
"FACT: The defendant was 6' 8" tall and weighed over three hundred pounds at the time of the murder.
"FACT: The weapon used to murder Kathaleen Ruth Hooper is not in evidence. From the type wounds which were deep slashes and stab wounds, it is reasonable to believe that the weapon used was sharp and of sufficient length to enable the defendant to stab the victim seriously. Slits in the upholstered chair upon which the victim was found indicate that the instrument was of sufficient strength to penetrate the upholstery fabric.
"FACT: Kathaleen Hooper's throat had been slashed on each side. The injury was not a continuous wound but was inflicted by two separate, distinct, deliberate motions. A third slash was inflicted in addition to the other two.
"FACT: There were numerous stab wounds on the victim's body.
"FACT: There were stab and other wounds on the victim's arms indicating her attempts to avoid being cut or stabbed.
*1260 "FACT: The victim's fingers on one hand were nearly severed from an apparent attempt to hold the sharp weapon.
"FACT: The overturned furniture and the location of the victim's body close to the front door make reasonable the assumption that she attempted to flee for her life by escaping through the front door.
"FACT: Rhonda Kay Hooper was a petite nine year old girl at the time of her death. As previously noted, the defendant was six feet eight inches tall and weighed three hundred twenty-five pounds.
"FACT: The medical examiner testified that the child died from strangulation as a result of the ligature found around her neck.
"FACT: The child's body was positioned as though in retreat. It is reasonable to infer that she had seen the defendant advancing upon her with the ligature ready for use. Since her body bore a slash wound, it is equally reasonable to infer that she observed the knife.
"FACT: It can be inferred that the child had observed her mother's unsuccessful struggle for life.
"CONCLUSION: The time in minutes and seconds of Kathaleen Hooper's struggle for life is not known. Its duration in terms of agony and contemplation of the horrible death which she sought to avoid can be measured sufficiently by the number of her wounds and other signs of the struggle as set forth above.
"Such measurement reveals that the defendant's acts in the murder of Kathaleen Hooper and immediately preceding it amounted to nothing less than torture.
"The same result is inescapable with regard to the death of Rhonda Kay Hooper. The nine year old child watched in horror as her mother was murdered by the defendant. As he turned his attention to her and advanced upon her, her heart must have burst from fear. As the hulk of a man mounted the ligature to her small throat and began to apply its death grip, stifling the most slight whimper from the terrified child, she died.
"To constitute an aggravating circumstance under this paragraph, the murder must be accompanied by such additional facts as to set the crimes apart from the norm of capital felonies. It must be conscienceless or pitiless which is unnecessarily torturous to the victim. State v. Dixon, 283 So.2d 1, 9 (Fla. 1973) [cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)]. This Court's view is that beyond a reasonable doubt it has been shown that the murders were shockingly evil, outrageously wicked and vile, and that the victims suffered high degree of pain to the utter indifference of the defendant.
"There is an aggravating circumstance under this paragraph as to the murders of Kathaleen Ruth Hooper and Rhonda Kay Hooper.
"4. The murders were committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
"FACT: Kathaleen Ruth Hooper struggled with the defendant.
"FACT: No motive for the murder of Kathaleen Hooper was shown by the evidence.
"FACT: The defendant denied the murder and, consequently, no legal nor moral pretense nor justification was shown.
"FACT: Rhonda Kay Hooper was murdered by the deliberate act of the defendant in a cold, calculated manner. His choice of the weapon of her destruction, a ligature, exceeds the premeditations required to prove capital murder. Blood stains proved to have been only those of the defendant's were found on the ligature. It had to be formed, placed, and tied upon the child's throat before the pressure required to take her life was applied. This murder was an execution.
"FACT: The defendant denied her murder and, consequently, no legal nor moral pretense nor justification was shown.
"FACT: No motive for the murder of Rhonda Kay Hooper was shown by the evidence.
*1261 "FACT: The child had loved him and they had gotten along exceptionally well, according to the defendant's testimony, which was corroborated by James Scott Hooper and others.
"CONCLUSION: There is no aggravating circumstance under this paragraph as to Kathaleen Ruth Hooper.
"There is an aggravating circumstance under this paragraph as to Rhonda Kay Hooper. Those facts constitute one of those cases which is the exception to the contract type murder referred to in McCray v. State, 416 So.2d 804, 807 (Fla. 1982), and Cannady v. State, 427 So.2d 723, 730 (Fla. 1983). The murder was an execution."
Defendant argues that the trial court erred in not giving his requested instruction that the jury could consider intoxication as a mitigating factor when deciding what sentence to recommend. He contends that the jury had a right to know that Hooper's intoxication was a legitimate factor for them to consider. Although denying this special instruction, the trial court allowed defendant free rein to argue this matter, and he did so, under the mitigating circumstances that the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance and that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. The court's denial of the requested instruction was not error.
Finally, defendant challenges two of the aggravating factors which relate to the murder of Rhonda as not being proven beyond a reasonable doubt. We disagree and agree with the trial court's holding that the aggravating circumstances of committing the murder to avoid lawful arrest and committing the murder in a cold, calculated, and premeditated manner were proven beyond a reasonable doubt.
Even if we had decided that these aggravating factors relating to Rhonda's murder were improperly found, we would have affirmed the sentence of death for her murder because we can know that the result of the weighing process would not have been different had these factors not been considered. The trial court imposed the sentence of death for the murder of Kathaleen on the basis of the two aggravating factors it found applicable both to the murder of Rhonda and Kathaleen, which are not challenged here, and absent the application of the additional factors which it found applicable to only the murder of Rhonda and which defendant now contests. It weighed the same mitigating factors in both cases and concluded that the death sentence was warranted for the murder of Kathaleen and that the death sentence was warranted for the murder of Rhonda.
Accordingly, finding no reversible error, we affirm the convictions and sentences.
It is so ordered.
ADKINS, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
OVERTON, J., dissents with an opinion, in which BOYD, C.J., and McDONALD, J., concur.
McDONALD, Judge, concurring in part and dissenting in part.
I think it was reversible error to have failed to give the requested voluntary intoxication instruction.
I agree that if there is a valid conviction the death penalty is appropriate.
OVERTON, Judge, dissenting.
I find that the trial court committed reversible error by refusing to grant the defendant's requested jury instruction on voluntary intoxication. Although the defendant did not assert intoxication as his primary defense, it was clearly the principal theory of the prosecutor, who argued to the jury that the defendant "did these acts in an intoxicated rage." Given the state's position, I find the defendant was entitled to have the jury determine whether the *1262 "intoxicated rage" was such that the defendant was unable to formulate the requisite intent for a conviction of first degree murder. In my view, had the trial judge given the requested instruction, the jury may have returned a verdict of second-degree murder. Under these circumstances, the error was not harmless and I must dissent from the conviction and the imposition of the death sentence.
BOYD, C.J., and McDONALD, J., concur.