611 So.2d 1224 (1992)
Norman PARKER, Appellant,
v.
STATE of Florida, Respondent.
No. 73935.
Supreme Court of Florida.
October 15, 1992.
Rehearing Denied February 5, 1993.
*1225 Larry Helm Spalding, Capital Collateral Representative, Gail E. Anderson, Asst. Capital Collateral Representative, Tallahassee, and Billy H. Nolas, and Julie D. Naylor, Sp. Assistants Capital Collateral Representative, Ocala, for appellant.
Robert A. Butterworth, Atty. Gen. and Fariba N. Komeily, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Norman Parker appeals the circuit court's denial of his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Parker was convicted of a 1978 murder, sexual battery, four counts of robbery, and unlawful possession of a firearm during the commission of a felony. The jury recommended death by a ten-two vote and the trial judge imposed the sentence, finding five aggravating circumstances[1] and no mitigating circumstances. This Court affirmed the convictions and sentences in Parker v. State, 456 So.2d 436 (Fla. 1984), and that opinion recited the facts:
The evidence at trial established that on July 18, 1978, defendant and his partner, Manson, were admitted to a Miami home in order to complete an illegal drug transaction with two male occupants of the home. Soon thereafter, defendant and Manson produced a sawed-off shotgun and a chrome-plated revolver, respectively, and demanded cocaine and money from the two victims. The two victims were forced to surrender jewelry, strip naked, and lie on a bed. Two other occupants, a female and her boyfriend (Chavez), were discovered in another room and also forced to strip naked and surrender jewelry. All four victims were then confined to the same room, on the same bed. Defendant and Manson exchanged *1226 weapons and defendant guarded the four victims while Manson searched the home for additional loot. Defendant threatened to kill the victims because he said he had escaped from jail and had nothing to lose. The victims pleaded with defendant and Manson to take what they wanted and leave. Chavez also pleaded with defendant and Manson to leave his girlfriend alone. After a period of time, defendant aimed the revolver at Chavez's back, whereupon Manson handed defendant a pillow. Defendant then shot Chavez through the pillow. The other three victims heard the muffled shot and nothing further from Chavez. Chavez died from a single gunshot wound to the chest. Defendant then committed a sexual battery on the female. Defendant and Manson fled, but were later identified by the surviving victims from a photographic lineup.
On August 24, 1978, defendant shot a man in a Washington, D.C., bar. A bullet from this victim's body was matched with the bullet taken from Chavez's body. Jewelry found in possession of the defendant in D.C. was similar to jewelry taken from the Miami victims... .
During the penalty phase, the evidence showed that defendant had been sentenced previously to life imprisonment in 1967 for a first-degree murder committed in Dade County, Florida, and that he was sentenced to life imprisonment for a second-degree murder committed in D.C. in August, 1978.
Id. at 439-40. We denied habeas corpus relief in Parker v. Dugger, 537 So.2d 969 (Fla. 1988).
Parker filed his motion for postconviction relief in 1987. The circuit court held an evidentiary hearing in December 1988, limited to the question of whether counsel was ineffective in the penalty phase of Parker's trial for failing to develop mitigating evidence. After the hearing, Parker filed a "supplement" to his previously-filed motion. The circuit court, considering the motion and the posthearing supplement, denied relief. We affirm.
Parker raised thirteen claims in his rule 3.850 motion and seven in his supplement, some duplicating claims already made. We have repeatedly said that a motion under rule 3.850 cannot be used for a second appeal to consider issues that either were raised in the initial appeal or could have been raised in that appeal. Jones v. State, 446 So.2d 1059, 1061-62 (Fla. 1984) (citing numerous cases). Most claims fall into this category. The procedurally barred claims are: 1) Parker's unconstitutionally obtained statements were admitted at trial; 2) the jury instructions failed to define felony murder; 3) jury instructions on lesser included offenses were omitted; 4) the jury instructions on the "cold, calculated, and premeditated" aggravating factor were deficient; 5) statements of the victim's father were erroneously admitted; 6) the felony-murder aggravator fails to narrow the class of persons eligible for the death penalty; 7) the jury was not instructed that sentences could be served consecutively; 8) Parker was absent during "important stages" of the proceedings; 9) instruction on circumstantial evidence was denied; 10) the jury's sense of responsibility was diminished; 11) Parker bore the burden of proving that a life sentence was warranted; 12) an erroneous jury instruction was given on the vote required for a life sentence; 13) jurors were erroneously excused for cause; and 14) mitigating evidence was not considered fairly.[2]
We approve the trial court's summary denial of relief on these barred claims. "The law is clear that when the motion and record conclusively demonstrate that the *1227 movant is not entitled to relief, the motion may be denied without an evidentiary hearing." Lightbourne v. State, 471 So.2d 27, 28 (Fla. 1985); see also Riley v. State, 433 So.2d 976 (Fla. 1983).
We approve the trial court's summary denial of relief on alleged ineffectiveness in the guilt phase of the trial. These allegations include failing to present certain alibi witnesses and failing to litigate alleged "fruit of the poisonous tree" (specifically: two bullets, certain of Parker's statements, and jewelry). The record shows that the alibi defense was vigorously presented. The fruit of the poisonous tree doctrine is inapplicable when the State learns of evidence from an independent source or when evidence inevitably would have been discovered. Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The two bullets were removed during autopsy and thus were not the product of the seizure of Parker's gun, which was not introduced. The jewelry, identified by the robbery victims, was seen on Parker while in custody after a valid arrest and likewise was not the product of the gun. The complained-of statements were introduced during cross-examination of Parker to impeach his testimony. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).
Parker's claim that his sentence rests on two prior unconstitutional convictions, which could have been raised on direct appeal, also is barred procedurally. In order to prevail on his claim that trial counsel was ineffective in failing to challenge these prior convictions, Parker must show that his trial counsel's performance was deficient and that the result of the proceeding would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We agree with the trial judge's conclusions that Parker failed to meet the Strickland test. She found:
(a) The 1967 Florida conviction for first-degree murder. In this case, Parker was convicted of first-degree murder upon his plea of guilty to the charge. He was sentenced to life in prison. In challenging this conviction, [Parker] argues that his plea resulted from coercion, fear, and secret threats, and was, therefore, not voluntarily entered. Nowhere in his collateral attack does he allege that, but for the [actions] of his trial counsel, he would have plead[ed] not guilty and would likely have been acquitted by a jury. Therefore, even though there may be a basis to set aside and vacate the guilty plea, there is no basis to find that [Parker] would not have been convicted of murder after a jury trial. Thus, no prejudice can be shown.
(b) The Washington, D.C. conviction of second-degree murder. [Parker] argues that trial counsel should have collaterally attacked the Washington, D.C. conviction on the ground that evidence of the gun in the D.C. case was illegally admitted into evidence and should have been suppressed. Assuming that counsel here had the duty to initiate this collateral attack and that [Parker] could show that his Washington counsel had been deficient in failing to file a motion to suppress, Mr. Parker still would not meet his burden of demonstrating prejudice. There is no reason to believe that without evidence of the gun in the Washington case Mr. Parker would have been acquitted. There were eye witnesses to the shooting in the Washington bar who identified Parker as the shooter, and Parker, himself, admitted the shooting and asserted the defense of self-defense.
In the same order, the trial judge denied relief on Parker's claim that trial counsel was ineffective for abandoning objection to a photograph of Parker used in a photolineup. We affirm the trial court's denial of relief on this claim. We find nothing unduly suggestive about the photo. The failure to raise a nonmeritorious issue is not ineffectiveness. King v. Dugger, 555 So.2d 355, 357-58 (Fla. 1990).
After the December 1988 evidentiary hearing, the trial court denied relief *1228 on Parker's claims that trial counsel was ineffective in the penalty phase. Here too we agree with the trial judge's conclusion that Parker failed to meet the Strickland test. She found, in response to claims that family members should have been called in the penalty phase, that
in these postconviction proceedings, three cousins, a sister and an aunt were called. However, because [Parker] had spent more than ten years in prison for a prior murder, these witnesses had had little contact with [him] in the years immediately before the crimes were committed. Their statements had little impact, and, at times, supported the view that [Parker] appeared normal, rather than brain-damaged and impaired.
The trial court also rejected the claim that counsel was ineffective for failing to present the testimony of Dr. Stillman, a psychiatrist, in the penalty phase. The court explained:
Dr. Stillman's testimony is wholly unpersuasive. His conclusion that [Parker] is brain-damaged rests on the relatives' postsentencing report of [Parker's] brief loss of consciousness in two childhood accidents. Significantly, [Parker] himself denied any accidents in his 1980 interview with Dr. Stillman and [Parker] presents no medical record of any kind to substantiate these alleged injuries. In fact, his IQ, as tested by Dr. Stillman, is slightly higher than average, and there is no objective indication of [Parker's] compromised intellectual functioning. Dr. Stillman's opinion is simply that brain damage invariably results from loss of consciousness, no matter how brief the period of unconsciousness.
Moreover, Dr. Stillman's conclusions that [Parker] was incompetent to stand trial and insane at the time of the offense  neither conclusion being urged by [Parker] in these proceedings, and both conclusions being contradicted by the overwhelming evidence in the case  undermine the credibility of his further opinion that [Parker's] capacity to conform his conduct to law was impaired.
The court cannot conclude that the jury likely would have been persuaded by such testimony to recommend a sentence other than death, especially in light of the compelling aggravating circumstance that [Parker] had been convicted of murder on two prior and separate occasions.
We find no error in the trial court's conclusions.
Accordingly, we affirm the denial of postconviction relief.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only.
NOTES
[1] The capital felony was committed while under sentence of imprisonment (Parker had escaped from the Opa-Locka Correctional Facility five months before the murder of Chavez); committed during a sexual battery; committed for pecuniary gain; committed in a cold, calculated, and premeditated manner; and appellant was previously convicted of a capital offense or violent felony. See § 921.141(5), Fla. Stat. (1977). (Parker was previously convicted of two murders: the first-degree murder of Marvin Sneed, in 1967, in Dade County, Florida, and the second-degree murder of Thomas Spriggs, in 1979, in Washington D.C.)
[2] Claims 2, 3, 4, 5, 7 are not only procedurally barred, they were found to be without merit or harmless in Parker's habeas proceeding. Parker v. Dugger, 537 So.2d 969, 970-73 (Fla. 1988). Claim 1 was found to be without merit in the direct appeal. Parker v. State, 456 So.2d 436 (Fla. 1984). See also McNeil v. Wisconsin, ___ U.S. ___, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).