531 So.2d 79 (1988)
Ronald WOODS, Appellant,
v.
STATE of Florida, Appellee.
No. 71523.
Supreme Court of Florida.
July 14, 1988.
Rehearing Denied October 12, 1988.
Larry Helm Spalding, Capital Collateral Representative, Mark Evan Olive, Chief Asst. and Jane G. Rocamora, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellant.
*80 Robert A. Butterworth, Atty. Gen., and John M. Koenig, Jr. and Edward C. Hill, Jr., Asst. Attys, Gen., Tallahassee, for appellee.
PER CURIAM.
Ronald Woods, a prisoner for whom a death warrant has been signed, appeals the trial court's denial of his motion for post-conviction relief. We have jurisdiction pursuant to article V, section 3(b)(1) of the state constitution and Florida Rule of Criminal Procedure 3.850. We affirm the trial court's order and lift the stay of execution.
While imprisoned at Union Correctional Institution, Woods and another inmate, Leonard Bean, stabbed four guards, one of whom died. In a joint trial the jury convicted Woods of first-degree murder, three counts of attempted first-degree murder, and possession of contraband, but convicted Bean of only one count of attempted first-degree murder as well as first-degree murder and possession. The trial court agreed with the jury's recommendations and sentenced Bean to life imprisonment and Woods to death. We affirmed Woods' convictions and sentences on appeal. Woods v. State, 490 So.2d 24 (Fla.), cert. denied, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986).
In early October Governor Martinez signed Woods' death warrant, effective from December 9 through 16, 1987, with execution scheduled for December 10, 1987. The Office of the Capital Collateral Representative (CCR) then filed a 3.850 motion with the trial court. This motion alleged four grounds for relief: 1) execution of an eighteen-year-old offender with the mental age of twelve is cruel and unusual punishment; 2) the trial court's failure to grant a continuance rendered counsel unable to prepare for sentencing and deprived Woods of a competent mental examination and, alternatively, counsel provided ineffective assistance by not discovering and presenting more mitigating evidence; 3) a pervasively prejudicial atmosphere violated Woods' right to a fair and impartial trial; and 4) the trial court improperly instructed the jury that it could consider Woods' mental problems in aggravation. After a hearing on this motion, the trial court found the first three issues procedurally barred and granted the state's motion for summary dismissal of those points. The court then scheduled an evidentiary hearing on the fourth issue for December 1, 1987.
At that hearing the court reporter responsible for Woods' trial testified and played a tape recording of the trial judge, R.A. Green,[1] reading the instructions to the jury. The recording demonstrates that the first aggravating circumstance given as to Woods was that he was under sentence of imprisonment, not that his mental state could be considered in aggravation as reflected in the record filed here. After the hearing, the trial court held that the "tape speaks for itself, and it clearly and unequivocally shows the proper Jury instruction was given by the Trial Judge to the Jury"[2] and denied the motion for postconviction relief.
At the December 1 hearing CCR presented an "amended emergency" motion for postconviction relief raising five new issues. These issues were: 1) the prosecutor improperly raised, and the court improperly considered, the victim's personal and professional relationship with the prosecution and the court in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); 2) the prosecutor improperly commented on Woods' failure to present any evidence in his defense and, alternatively, counsel's failure to object constituted ineffective assistance; 3) the court improperly relied on juvenile offenses and prison disciplinary reports to aggravate the sentence; 4) the prosecutor and court violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by diminishing the jury's role in sentencing; and 5) Woods' trial counsel, Vipperman, should have argued that Bean's counsel, Replogle, had a conflict of *81 interest in a joint trial because Replogle originally represented both Bean and Woods. CCR argued that the court could not apply the thirty-day limitation on filing motions for postconviction relief after a death warrant has been signed with execution set for at least sixty days in the future. Fla.R.Crim.P. 3.851. The state, on the other hand, argued that these issues could have been presented in the original motion and urged the court to hold them procedurally barred. The court reviewed the claims and, noting that its November 23 order denied CCR's request to amend the original motion, held:
These claims are based on information contained in the record. The same record the Petitioner reviewed and cited when it filed its original Motion. In both their original Motion, as well as the Amended Motion, the same transcript is cited, only different pages. Since the Amended Motion does not relate to the grounds raised in the original Motion, and since this Court finds no reason these claims could not have been raised within the time limits provided by the rules, the same is hereby DENIED. To permit the Petitioner to use this procedure of filing new Motions and calling them Amended Motions would create a situation that there never would be finality. This type of activity is the very reason the Rule [3.851] was created.
At the December 1 hearing CCR also filed another amended motion for postconviction relief. According to that motion, allowing the state to demonstrate at an evidentiary hearing that the transcript was in error regarding the instruction CCR complained about rendered the entire record unreliable. The court found nothing in the motion to demonstrate the transcript's incompleteness or inaccuracy. The court held that the "transcript appears to now accurately reflect what occurred during the trial" and that the record did not deny Woods any due process.[3]

I. Original Motion

A. Error in Transcript
We agree with the trial court's resolution of this issue. The purpose of a 3.850 motion is to provide for inquiry into the alleged constitutional infirmity of a judgment or sentence. McCrae v. State, 437 So.2d 1388 (Fla. 1983). Postconviction proceedings cannot be used as a substitute for an appeal, and, because they should be raised on appeal, claims regarding jury instructions are, in general, not cognizable in 3.850 proceedings. Raulerson v. State, 420 So.2d 567 (Fla. 1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983); Merrill v. State, 364 So.2d 42 (Fla. 1st DCA 1978), cert. denied, 372 So.2d 470 (Fla. 1979). Here, however, CCR claimed that the trial court instructed the jury to consider a statutory mitigating circumstance as an aggravating circumstance, thereby violating the eighth amendment. We find, contrary to CCR's contention, no error in the court's holding an evidentiary hearing on this claim.
The test for granting a postconviction motion is whether or not the defendant received a fair trial. Whether the trial court erred in the instructions could only be determined through an evidentiary hearing. The testimony and evidence given at the hearing clearly demonstrate that the trial court correctly instructed the jury and that there is no merit to the claim.
If CCR's purpose in making the misinstruction claim was to ascertain the truth about how the court instructed the jury, that purpose has been accomplished. We do not find, however, that this clarification of the record has impaired the credibility of the record as a whole. Nor do we find that the court erred in limiting the hearing to the claim made in the 3.850 motion. If CCR could have pointed out other specific errors in the transcript which, if truly errors, prejudiced Woods, inquiry into those areas would have been appropriate. The finding of one typographical error, however, does not authorize *82 an undirected fishing expedition on undeveloped assertions when errors in the transcript could have been and should have been brought up on appeal. To hold as CCR urges  that the entire record is inaccurate  is unwarranted.

B. Other Issues
The trial court correctly found the other issues in the original motion to be procedurally barred.

1. Mental Capacity and Prejudice
The claim that executing an adult with diminished mental capacity is cruel and unusual punishment could have been and should have been raised, if at all, on direct appeal. Therefore, it is procedurally barred from postconviction consideration.
This Court considered the prejudice claim on direct appeal. That CCR has now thought of different grounds for raising the same issue is insufficient to overcome the procedural bar. See Christopher v. State, 489 So.2d 22 (Fla. 1986).

2. Continuance
This Court also considered the trial court's refusal to grant a continuance on direct appeal. CCR now claims that not granting the continuance precluded trial counsel from conducting a reasonable penalty phase investigation and/or counsel unreasonably failed to discover and present mitigating evidence. CCR supplied Woods' school and medical records to two psychologists, one who testified at Woods' trial and one who is new to Woods' case, both of whom wrote reports back to CCR. According to CCR, a continuance and reasonable assistance by counsel would have resulted in more and better testimony regarding Woods and might have caused the jury to recommend life imprisonment rather than a death sentence. The grounds asserted do not overcome the procedural bar.
Woods' mother and a psychologist testified at Woods' sentencing as to his then-current status and his lifelong history of mental, emotional, and behavioral problems. According to his mother, Woods had seizures and convulsions from the time of his birth, which resulted in his being put on medication and his admission to a mental health center hospital when he was eight years old. His mother also testified that she supported her nine children through aid to dependent children and welfare assistance; that Woods' father left the family when Woods was four or five; that Woods later lived with his father, but was so mistreated that he ran away; that Woods was a follower, rather than a leader; and that Woods attended classes for retarded children rather than regular school classes.
The psychologist outlined Woods' home life, including the physical abuse by his father, and concluded that Woods had been emotionally deprived. He also testified about Woods' illnesses, including his hospitalizations, and opined that Woods had an organic brain disfunction. He stated that he had not seen the actual records, but that he had received reports that Woods had been hospitalized for up to six months as a child. The psychologist also testified that Woods' IQ was 69, that his judgment was impaired, and that Woods was not a leader.
Because this psychologist knew that Woods' medical records existed, presumably, trial counsel also knew of their existence. Because the records have now been presented for expert consideration, presumably, they could have been reviewed at the time of Woods' trial if the psychologist had thought them important enough. The jury, however, heard about Woods' problems, and the testimony now advanced, while possibly more detailed than that presented at sentencing, is, essentially, just cumulative to the prior testimony. More is not necessarily better.
As stated before, this Court considered on direct appeal the trial court's refusal to grant a continuance. CCR has not demonstrated error of the magnitude necessary to overcome the procedural bar of a previously considered claim. Moreover, couching a barred claim in terms of ineffective assistance of counsel will not revive such a claim. See Sireci v. State, 469 So.2d 119 (Fla. 1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986). We hold, therefore, that the trial court did not err in *83 failing to hold an evidentiary hearing on this claim.

II. Amended Motion
In its November 23 order the court denied CCR's request to be allowed to amend the original 3.850 motion at a later date, finding any amendment to be barred by the thirty-day limitation in rule 3.851. As the court decided, that rule was implemented to further some degree of finality in postconviction proceedings and to bring more order to such proceedings. See In re Rules of Criminal Procedure, Rule 3.851, 503 So.2d 320 (Fla. 1987). We do not encourage piecemeal litigation. On first death warrants when a 3.850 motion has never been filed, however, some leeway can be given, and we encourage trial courts to utilize their discretion and do so.
We recognize the trial court's exasperation at being presented with additional claims which could have been identified at the same time as the original 3.850 claims. An evidentiary hearing on CCR's diligence is not needed, however.[4] Moreover, the additional claims suffer from a procedural bar other than rule 3.851. In Booth v. Maryland the United States Supreme Court held that a jury cannot consider a victim impact statement in making its sentencing decision. Raising Booth in regards to considering the victim's relationship to the prosecution and the trial court is a misapplication of that case to a claim which should have and could have been raised on appeal. The prosecutor's supposed comments on Woods' failure to produce evidence also should have been raised on appeal. Presenting that claim under the alternate guise of ineffective assistance of counsel is unavailing. See Sireci. Likewise, the court's reliance on certain materials in sentencing could and should have been raised on appeal. Caldwell is not such a change in the law as to give relief in postconviction proceedings. Foster v. State, 518 So.2d 901 (Fla. 1987). Therefore, the claim regarding the jury's role in sentencing should have been raised, if at all, on appeal. Finally, the issue regarding Woods' former counsel, Replogle, and severance could have been raised on appeal. Calling Woods' counsel "unreasonable" in regards to this issue does not mean that this claim should be listened to at this, the wrong time. All of the amended motion's claims could have been developed, if they had merit, on appeal. They are not based on new facts or theories. CCR has presented no legal excuse which will overcome the procedural bar.
We find no error in the trial court's rulings and affirm the denial of postconviction relief. The previously entered stay is dissolved.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
SHAW, J., dissents with an opinion, in which BARKETT and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
SHAW, Justice, dissenting.
Justice Barkett correctly points out in her dissent that despite a chronological age of eighteen at the time the crime was committed, the appellant possessed an IQ of between 60 to 69 and the mental age of a twelve-year-old. The execution of such a person in my opinion violates article I, section 17 of the Florida Constitution. For this reason I am compelled to dissent from the majority opinion.
BARKETT and KOGAN, JJ., concur.
BARKETT, Justice, dissenting.
This appellant was eighteen years of age at the time the crime was committed, and his mental age was twelve. There is little question that he is mentally retarded, with an IQ of between 60 and 69. See Ellis & Luckasson, Mentally Retarded Criminal Defendants, 53 Geo.Wash.L.Rev. 414, 423 (1985) (persons with IQs between approximately *84 55 and 70 "have a substantial disability"). His age alone constitutes a significant mitigating factor under the death penalty statute. § 921.141(6)(g), Fla. Stat. (1985). While the United States Supreme Court has not directly addressed the issue, I conclude that imposing the death penalty on a mentally retarded person constitutes cruel and unusual punishment under both the federal constitution and article I, section 17 of the Florida Constitution.
At the very least, I believe this appellant is entitled to an evidentiary hearing on his claim of ineffective assistance of trial counsel. If counsel had conducted a reasonable investigation, he would have discovered a documented history of psychosis dating back to age eight. Particularly important are hospital records reflecting that at age eight, appellant was placed in a psychiatric hospital for treatment of a cerebral dysfunction. During this episode, appellant was physically restrained and treated with psychotropic drugs commonly prescribed for the treatment of psychosis.
Appellant submits that Dr. Harry Krop, appellant's expert, would have established the existence of statutory mitigating factors had he only known the information contained in these medical records. Specifically, Krop would have testified that appellant acted under duress, was emotionally disturbed, was substantially dominated by others, and suffered from a substantially impaired ability to conform his behavior to the requirements of law. Counsel's failure to apprise this expert of appellant's background constitutes prejudicially ineffective assistance of counsel, which was not cured by introduction of general evidence about appellant's troubled emotional history as described solely by his family.
Moreover, I believe the majority fails to analyze appellant's claim of ineffective assistance of counsel under the applicable law. See, e.g., Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The sweeping statement that "couching a barred claim in terms of ineffective assistance of counsel will not revive such a claim," majority opinion, at 83, is at best unclear and at worst a rule that would vitiate virtually any claim of ineffectiveness of counsel. Ineffective assistance necessarily concerns matters counsel failed to raise below, which by definition thus are procedurally barred. The issue in any claim of ineffectiveness is not the procedural bar, but whether counsel's deficiency, if any, led to a "reasonable probability that ... the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The facile standard applied by the majority could result in every claim of ineffectiveness being summarily dismissed as a subterfuge for raising barred claims.
Finally, I believe the trial judge erred in failing to let this appellant add several new claims to his request for relief. Nine days were left before the scheduled execution, and two weeks remained during which the warrant would be active. The trial court summarily denied appellant a hearing as to whether his counsel had performed with due diligence. Because a man's life is at stake, I conclude that it was fundamentally unfair not to afford appellant the requested hearing. The death penalty must be applied "fairly, and with reasonable consistency, or not at all." Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982). This principle means that a court must consider any point raised by a condemned prisoner as a reason why the death penalty should not be imposed.
KOGAN, J., concurs.
NOTES
[1] Judge Green is now retired. Both the court reporter and Wood's trial counsel identified the voice on the tape as being Judge Green's.
[2] Thus, the record filed with this Court, which supports CCR's claim, was refuted.
[3] The court noted that it limited CCR's questioning of the court reporter only because CCR asked him only purely speculative type questions.
[4] There is no question of CCR's effectiveness in this case. See Troedel v. State, 479 So.2d 736 (Fla. 1985).