662 So.2d 323 (1995)
Lloyd Chase ALLEN, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 81639.
Supreme Court of Florida.
July 20, 1995.
Rehearing Denied November 1, 1995.
*325 Bennett H. Brummer, Public Defender and Valerie Jonas, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for appellant, cross-appellee.
Robert A. Butterworth, Atty. Gen., and Randall Sutton, Asst. Atty. Gen., Miami, for appellee, cross-appellant.
PER CURIAM.
Lloyd Chase Allen, a prisoner under sentence of death, appeals his convictions for grand theft of an automobile and first-degree murder and the attendant sentences. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons expressed below, we affirm both the convictions and the sentences imposed.
Allen was indicted for the first-degree murder of Dortha Cribbs in Summerland Key, Florida, on November 13, 1991. He was also charged with kidnapping, robbery with a deadly weapon, grand theft, and grand theft of an automobile.
Cribbs left her home in Ohio to drive to Florida in November 1991. She apparently met Allen at a truck stop in Atlanta. Allen accompanied Cribbs during her visit with friends in Jacksonville Beach and during a stop in Bunnell to sell her trailer.
Allen, whom Cribbs introduced as "Lee Brock," told Cribbs' friends in Jacksonville Beach and Bunnell that he owned a ranch in Texas and a trucking rig. Cribbs told the friends that she was going into the trucking business with Allen after she sold her trailer in Bunnell and vacation home in Summerland Key. Cribbs was paid $4100 in hundred dollar bills for the trailer. Allen witnessed this transaction on November 12. The friends in both locations stated that Cribbs was wearing a diamond-studded horseshoe-shaped ring, which was valued at $8,000.
A man working at the house across the street from Cribbs' Summerland Key house saw her exit and re-enter the house early on the morning of November 13. He also observed Allen exit and re-enter the house around 11 a.m. The worker left for lunch at 11:45 a.m. When he returned a little after 1 p.m., the worker noticed that Cribbs' 1988 Ford Taurus was gone.
The real estate agent who managed Cribbs' property arrived between 12:30 and 1 p.m. to investigate Cribbs' unexpected arrival at the house. When no one responded to his knocks, the agent used his own key to enter the house. The television set, which was on high volume, was emitting loud static and a snowy picture. The coffee pot was turned on and half-full. The agent discovered Cribbs' body on the floor of the master bedroom. She was lying face down on a pillow and her body was surrounded by a puddle of blood.
The medical examiner placed the time of death between 4 a.m. and 2 p.m. on November 13. There were two stab wounds to the right side of Cribbs' face, ligature marks on her wrists and ankles, and a stab wound to her left neck that severed the carotid artery. The angle of the neck wound indicated that it *326 was inflicted as Cribbs lay face down. The left stab wound caused Cribbs to bleed to death. The medical examiner estimated that Cribbs lived for fifteen to thirty minutes after this wound was inflicted and was conscious for fifteen minutes. Based upon the lack of defensive wounds and blood splatter, the medical examiner opined that Cribbs was bound at the time that she was stabbed.
The following items were recovered from the scene: a suitcase containing a blue shirt and a camera loaded with undeveloped film depicting Allen; a pair of grey lizard skin boots; a pair of blue jeans containing a blood stain on the right knee, found at the foot of the bed; a sperm-stained hand towel, found by the side of the bed; a piece of window sash cord found under Cribbs' left arm consistent with the ligature marks and also consistent with a cord that had been cut in the spare bedroom; and a sheathed knife and a rag found in the spare bedroom. The contents of Cribbs' purse were scattered across the bed; the $4100 and diamond ring were missing. There were no signs of forcible entry and no fingerprints of value were found. The interior of the house and its contents appeared to have been wiped clean with a damp rag.
Expert witnesses testified that the body fluids found on the hand towel were consistent with Cribbs' and Allen's blood types and DNA genotypes; the blood on the jeans was consistent with Cribbs' blood. The suitcase, boots, and shirt recovered from the scene were identified by witnesses as items that Allen had or wore in Jacksonville Beach and Bunnell. Pursuant to the State's motion granted by the court, Allen tried on these items of clothing, which, with the exception of the jeans, fit him. Allen's inability to fit into the jeans was explained by a considerable weight gain following his arrest.
A taxi driver testified that he picked up Allen at the Buccaneer Lodge Tiki Lounge between 12:30 and 12:45 p.m. on November 13, that he took Allen to Key Largo, and that Allen paid the eighty-dollar fare with a hundred-dollar bill. Cribbs' automobile was located in the parking lot of the Buccaneer Lodge on December 23. The car was covered with debris, indicating that it had been parked there for some time. Allen's prints were lifted from the car. A trucker's log book containing a credit card number and a sequence of telephone numbers led the police to Allen's location in California, where he was arrested on February 18, 1992.
At the close of all evidence, the trial court entered a judgment of acquittal for robbery of the cash and for theft of the ring. The court found insufficient evidence that force was employed in connection with any taking and insufficient evidence that Allen had taken the ring. Allen also informed the court that he wished to proceed pro se during the penalty phase, if one was necessary. The jury found Allen guilty of first-degree murder and grand theft of an automobile, but not guilty of kidnapping.
After the verdict was announced, defense counsel moved to withdraw from representation during the penalty phase. Counsel informed the court that Allen wanted to waive presentation of mitigating evidence and to affirmatively argue for imposition of the death penalty. Defense counsel explained that he was uncomfortable advocating this position and that Allen was competent to represent himself. The court conducted a Faretta[1] inquiry and concluded that Allen knowingly and voluntarily waived his right to counsel and was competent to represent himself. The court ordered Allen's defense attorney to remain present in a stand-by counsel status. The court also ordered an examination for psychological competency pursuant to Florida Rule of Criminal Procedure 3.210. At the subsequent competency hearing, two mental health experts testified that Allen satisfied all six items of competency under Florida Rule of Criminal Procedure 3.211[2] *327 and was competent to proceed to the penalty phase. The court found Allen competent to represent himself in the penalty phase.
In his closing argument to the jury, Allen expressly denied the existence of mitigating evidence and specifically denied that he was abused in childhood or that he suffered from alcoholism or drug abuse. While Allen asserted his factual innocence of murder, he also urged the jury to vote for death because he felt responsible and remorseful for Cribbs' death. Allen theorized that Cribbs had been murdered by an unnamed associate that he had summoned to assist with house repairs and whom he had told that Cribbs carried a large sum of cash in her purse. Allen also stated that he preferred death to life in prison. The jury recommended death by a vote of eleven to one.
The court followed the jury's recommendation and imposed a sentence of death, and also sentenced Allen to five years for grand theft of an automobile. The court found three aggravating factors: the murder was committed while under a sentence of imprisonment based upon Allen's escape from a work release program in Kansas; the murder was committed for pecuniary gain based upon Allen's statements, the contents of the purse scattered across the bed, and the theft of the automobile; and the murder was especially heinous, atrocious, or cruel based upon the medical examiner's testimony that it took fifteen to thirty minutes for death to occur and that Cribbs would have been conscious for fifteen minutes after being stabbed. §§ 921.141(5)(a), (f), (h), Fla. Stat. (1991). The court also found two nonstatutory mitigators that were not argued but were contained within the record: Allen's family background and his military service in Vietnam. The court also stated that it did not consider Allen's request for the death sentence in imposing the sentence.
On appeal, Allen raises six issues as error: 1) the admission of a photograph and victim impact testimony, and prosecutorial argument thereon; 2) the waiver of the presentation of mitigation evidence without meeting the requirements of Koon v. Dugger, 619 So.2d 246 (Fla. 1993); 3) Allen's unsworn and unsupported denials of applicable mitigating factors in argument to the jury during the penalty phase; 4) application of the pecuniary gain aggravating factor; 5) application of the heinous, atrocious, or cruel (HAC) aggravating factor; and 6) prosecutorial argument of a nonstatutory aggravating factor during the penalty phase. On cross-appeal, the State argues that the mitigating circumstances found by the court are not supported by the record and are refuted by the evidence.
Allen raises only one issue regarding the guilt phase of the proceedings. He contends that the court erred in admitting a photograph of Cribbs in which one of her grandchildren is seated on her lap. The photograph in question was admitted to depict the distinctive diamond ring that Cribbs wore. That ring was the basis for the grand theft charge against Allen. The test for the admissibility of a photograph is whether the photograph is relevant to a material issue either independently or by corroborating other evidence. Straight v. State, 397 So.2d 903, 906 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). In the instant case, the photograph was relevant to corroborate the witnesses' testimony regarding the existence and value of the missing ring. The jury's attention was called solely to the ring; the child's presence was not mentioned when the photograph was published to the jury, nor was it made a feature of the trial. The court sustained the defense's objection to the introduction of a similar second photo, finding that the first photo was better suited for the purpose of identifying the ring. We find no error regarding the admission of the photograph.
Allen also alleges that the court erred in admitting certain testimony about Cribbs' family relationships and permitting the prosecutor to comment about those relationships in closing argument. Allen objected on the grounds of relevancy when the State asked Cribbs' son how many children he had. The judge overruled the objection, stating that he would "allow some latitude." Allen objected again when Cribbs' stepson testified that his children and grandchildren had a very close relationship with Cribbs. Allen did not specify the grounds for this second objection. *328 The judge overruled the objection "for the moment."
We agree with Allen that the challenged testimony regarding Cribbs' grandchildren was not relevant to any material fact in issue. See Burns v. State, 609 So.2d 600, 605 (Fla. 1992). Thus, the court erred in admitting this irrelevant testimony regarding Cribbs' family relationships during the guilt phase of the trial. However, based upon the record in this case, there is no reasonable possibility that this error contributed to Allen's conviction. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Thus, we find the error to be harmless beyond a reasonable doubt as to the finding of guilt.
Allen also contends that the prosecutor improperly highlighted the victim's family relationships during closing argument to the jury in order to invoke the jury's sympathy for the victim. We find that Allen did not properly preserve this issue below. To preserve an allegedly improper prosecutorial comment for review, a defendant must object to the comment and move for a mistrial. Parker v. State, 456 So.2d 436, 443 (Fla. 1984). Allen never objected to any of the prosecutor's comments. Moreover, even before the prosecutor referred to Cribbs' family ties during closing argument, defense counsel repeatedly characterized the victim as a "nice, old grandmother," "a lonely widow," and "a lady who has a large family" during his guilt phase closing argument. The defendant cannot complain about the prosecutor's comments when defense counsel emphasized the same information to the jury as part of the defense strategy.[3]
Allen also argues that the court erred in permitting the introduction of victim impact evidence and argument during the penalty phase as well. Even if this issue had been preserved for review, it is without merit. In Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that "if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar." Florida's legislature has specifically provided for the admission of victim impact evidence "to demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death." § 921.141(7), Fla. Stat. (Supp. 1992). Even though section 921.141(7) did not become effective until eight months after the instant offense occurred, its application in this case does not violate the constitutional prohibition against ex post facto laws. See Windom v. State, 656 So.2d 432 (Fla. 1995) (finding that section 921.141(7) only relates to admission of evidence and is procedural and thus does not violate prohibition against ex post facto laws).
Allen does not challenge the sufficiency of the evidence supporting his convictions. We have examined the record, however, and find sufficient evidence to support Allen's convictions for grand theft and first-degree murder. We find no other error that would merit reversal. Thus, we affirm Allen's convictions.
The remaining issues raised by Allen involve the penalty phase proceedings. Allen first asserts that the court erred in accepting his waiver of mitigating evidence where defense counsel did not investigate possible mitigating evidence and there was no record showing of mitigation evidence as required by Koon. In Koon this Court established the procedure that must be followed when a defendant, against counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase. 619 So.2d at 250. Counsel must inform the court on the record of the defendant's decision. Based upon an investigation, counsel must indicate whether there is mitigating evidence that could be presented and what that evidence would be. Defendant must then confirm on the record that counsel has discussed these matters with him, and despite counsel's recommendation, the defendant wishes to waive presentation of penalty phase evidence. Id. We established this rule because of "the *329 problems inherent in a trial record that does not adequately reflect a defendant's waiver of his right to present any mitigating evidence." Id.
In Koon, we determined that defense counsel committed no error in following Koon's instruction not to present evidence during the penalty phase because counsel had investigated potential mitigating evidence before trial and argued the existence of mitigating factors based upon testimony presented in the guilt phase. Id.
We find the procedure established in Koon inapplicable to this case for two reasons: 1) during the penalty proceedings before the jury, Allen asserted his right of self-representation and the court found him competent to represent himself in the penalty phase; and 2) the opinion in Koon did not become final until several months after Allen's sentencing was conducted.
As noted above, the court conducted a Faretta inquiry and determined that Allen's waiver of the right to counsel was voluntarily and intelligently made. The two mental health experts who examined Allen at the court's request also concluded that Allen was competent to proceed to the penalty phase. Thus, unlike Koon, in this case the penalty proceeding before the jury was conducted by a defendant who chose to represent himself and decided not to present mitigating evidence. See Hamblen v. State, 527 So.2d 800, 802-04 (Fla. 1988).
However, we note that Allen was represented by counsel again during the sentencing proceeding. During deliberations as to Allen's sentence, the jury requested that it be given written copies of the jury instructions and that the penalty phase evidence be submitted to it. When the judge asked Allen if he had any objections, he requested permission "to step aside and let [defense counsel] take over all the legal things to follow." Defense counsel then re-undertook Allen's representation and offered no objection to the jury's request. Defense counsel's representation during the penalty proceeding was limited to this single issue, and the jury returned its recommendation of death several hours later.
Counsel, however, also represented Allen during the sentencing proceeding where the State presented three witnesses to rebut the residual doubt argument that Allen had made to the jury during closing argument in the penalty proceeding. The State also presented into evidence a radio interview with Allen that was taped after the jury returned its recommendation of death. During argument to the court at sentencing, defense counsel stated that he had no mitigating factors to present because Allen refused to provide any and "repeatedly requested that I not plead for life in his case." Counsel further stated that he was "biting his lip" because he was "not allowed to open up and say everything that I would like to say and argue everything that I want to argue," but was instead respecting Allen's wishes on this matter and would "do exactly what [Allen] asked me to do." Although the judge asked defense counsel whether he had informed Allen about the statutory mitigating factors available, there was no indication that counsel had investigated Allen's background or history to determine whether particular mitigating evidence was available. Counsel also made no proffer of mitigating evidence that could be presented to the court.
While this procedure arguably fell short of that established in Koon, our ruling in Koon by its own terms is prospective only. 619 So.2d at 250; see also Elam v. State, 636 So.2d 1312, 1314 (Fla. 1994). The opinion in Koon did not become final until rehearing was denied in June 1993, over three months after sentencing occurred in the instant case. Because the Koon procedure was not applicable either during the penalty proceeding before the jury or during the sentencing proceeding before the judge, we find no error on this point.
In issue 3 Allen claims that the court erred by permitting him to deny the existence of mitigation during the penalty phase before the jury. Allen disavowed that he had a bad childhood, and stated that he did not have either an alcohol or drug problem. In summary, he stated that "there is not going to be any excuses today and there will not be any mitigating factors here."
*330 We find no error in the trial court's handling of this matter. A defendant has a constitutional right to represent himself. Faretta, 422 U.S. at 819-21, 95 S.Ct. at 2533-34; Hamblen, 527 So.2d at 804. As discussed above, the court determined that Allen was clearly competent to do so. Thus, Allen was entitled to control the overall objectives of his defense, including the decision to disavow mitigation. Cf. Farr v. State, 656 So.2d 448 (Fla. 1995) (finding the defendant had right to controvert the case for mitigation). Moreover, even if the court erred on this point, any error would be harmless beyond a reasonable doubt. DiGuilio. Despite Allen's disavowal of mitigating factors, the trial court carefully reviewed the record and found two nonstatutory mitigating factors to be present.
On cross-appeal, the State argues that the two mitigating factors found by the court are not supported by the evidence. Even though Allen refused to present any mitigating evidence and requested the death sentence, the judge carefully analyzed the possible statutory and nonstatutory mitigating evidence contained in the record. The judge stated that he considered both the trial record and the presentence investigation report. While there is no rule requiring presentence investigations in capital cases, we have encouraged trial judges to order them "in at least those cases in which the defendant essentially is not challenging imposition of the death penalty." Farr, 656 So.2d 448. As noted in the sentencing order in this case, even though the two nonstatutory mitigating factors of family background and military service were not argued to the court, the court found evidence of these factors contained within the record. Both the presentence investigation report and the psychological evaluations, which are part of the record in this case, contain evidence to support the mitigating circumstances found by the judge. Accordingly, we find no error on this point.
Allen also argues that court improperly found the aggravating factor that the murder was committed for pecuniary gain. According to Allen, because he was acquitted of robbery during the guilt phase, the court was estopped from finding the pecuniary gain aggravating factor in the penalty phase. While the sentencing order recognizes that the court granted Allen "a judgment of acquittal for the specific elements of the offense of robbery," it also states that there was ample evidence in the record to support the finding of pecuniary gain, including "the statements of the Defendant, the contents of the victim's purse strewn across the bed, and the subsequent discovery of the victim's car."
To establish the pecuniary gain aggravating circumstance, the State must prove a pecuniary motivation for the murder. Hill v. State, 549 So.2d 179, 183 (Fla. 1989); Scull v. State, 533 So.2d 1137, 1142 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989). We agree with Allen that the taking of Cribbs' car would not support the finding of pecuniary gain. In light of the fact that the car was apparently abandoned shortly after the murder, it is possible that the car was taken to facilitate escape rather than as a means of improving Allen's financial worth. See Scull, 533 So.2d at 1142; Peek v. State, 395 So.2d 492, 499 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981).
However, in this case the trial court also relied on Allen's own statements to the jury that he was a con man and that his job "is to steal the money and to get away." Although Allen denied killing Cribbs, he candidly admitted during his radio interview that he had lied to gain Cribbs' confidence and that he intended to steal her money. Thus, by his own admission, Allen's entire association with Cribbs was motivated by pecuniary gain. He also stated that he witnessed the sale of the trailer on the day before Cribbs' murder and saw her put $4100 in cash in her purse. Neither the cash nor Cribbs' diamond ring were found at the scene. However, the other contents of Cribbs' purse were scattered across the bed at the murder scene. Based upon this evidence, we uphold the trial court's finding that the pecuniary gain aggravating circumstance is present in this case.
In issue 5, Allen argues that the heinous, atrocious, or cruel (HAC) aggravating factor was not applicable in this case. *331 We disagree. The medical examiner testified that Cribbs was alive when her ankles and wrists were bound as there was bleeding under the ligature marks. The medical examiner also testified that Cribbs was alive when she was stabbed on the right side of her face as blood was present on the surface of these wounds. Based upon the lack of defensive wounds and the fact that the blood was confined to the immediate area of the body, the medical examiner opined that Cribbs was bound at the time the wounds were inflicted. The fatal wound was a four to five inch stab wound to the left neck that extended into Cribbs' mouth and severed her left carotid artery. Cribbs bled to death fifteen to thirty minutes after this wound was inflicted. The medical examiner also testified that she would have remained conscious for fifteen minutes after the artery was severed. We find that these facts establish HAC beyond a reasonable doubt. See, e.g., Pittman v. State, 646 So.2d 167, 173 (Fla. 1994) (finding HAC where victims stabbed and bled to death), cert. denied, ___ U.S. ___, 115 S.Ct. 1982, 131 L.Ed.2d 870 (1995).
As his final issue, Allen argues that the prosecutor improperly argued the nonstatutory aggravating factor of future dangerousness during the penalty phase before the jury and during the sentencing proceeding before the judge. While arguing to the jury that the aggravating circumstance of "committed by a person under a sentence of imprisonment" applied in this case, the prosecutor reminded the jury that Allen had escaped from a work release facility in Kansas in 1990. The prosecutor also argued that "no form of control, whether it was probation or parole or prison or work release was adequate to take care of this defendant. Had he served out his term of years in Kansas at the time, this crime might not have been committed 13 months later." Allen contends that the prosecutor was in essence arguing that he should be executed because he would escape from prison and kill again, which constitutes a nonstatutory aggravating factor that the sentencer may not consider. See Teffeteller v. State, 439 So.2d 840, 845 (Fla. 1983) ("There is no place in our system of jurisprudence for [future dangerousness] argument."), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984).
Initially, we note that this issue has not been preserved for appeal as the defense neither objected to the prosecutor's argument during either proceeding nor made a motion for mistrial. Parker, 456 So.2d at 443. However, even if the issue of the prosecutor's argument to the jury had been preserved, it would have no merit. The prosecutor did not predict that Allen would murder again if he were sentenced to life imprisonment and paroled after twenty-five years, which is the type of argument that this Court condemned in Teffeteller, 439 So.2d at 844-45. Instead, the prosecutor's comment in this case was very similar to the one that we found proper in Parker, 456 So.2d at 443.
Even if defense counsel had preserved the issue of the prosecutor's argument during the sentencing proceeding, any error would be harmless in this case. The sentencing order specifically provides that the court's decision to impose the death sentence was based solely on the three statutory aggravating factors of committed by a person under a sentence of imprisonment, committed for pecuniary gain, and HAC. The order further provides that "[t]he Court did not allow any other aggravating factors to be argued to the jury and the Court finds that those aggravating factors do not exist or there was insufficient evidence in the record to support them."
In a footnote to this final issue, Allen also argues that his waiver of mitigation evidence precludes this Court from conducting a proportionality review of the death sentence. As discussed above, we find no error regarding Allen's decision to waive presentation of mitigation evidence and to affirmatively assert the non-existence of mitigation. Such a valid waiver of mitigation does not preclude this Court from conducting the required proportionality review. See Hamblen. Moreover, we find that the facts of this case warrant the death sentence imposed and that the sentence is proportionate to other sentences of death affirmed by this Court. See, e.g., Carter v. State, 576 So.2d 1291 (Fla. 1989) (affirming death sentence where *332 the trial court found three aggravating circumstances of committed while under a sentence of imprisonment, committed during a robbery, and prior violent felony conviction, and one nonstatutory mitigating circumstance of a deprived childhood), cert. denied, 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991).
Accordingly, we affirm both Allen's judgment of guilt and his sentence of death.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING and WELLS, JJ., concur.
KOGAN, J., concurs in result only.
ANSTEAD, J., concurs as to the conviction and concurs in result only as to the sentence.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] In considering the issue of competence to proceed, the examining experts are required to consider the defendant's capacity to appreciate the charges or allegations, appreciate the range and nature of possible penalties, understand the adversary nature of the legal process, disclose to counsel facts pertinent to the proceedings at issue, manifest appropriate courtroom behavior, and testify relevantly. Fla.R.Crim.P. 3.211(a)(2)(A).
[3] Defense counsel essentially argued that Allen was a convenient suspect because he was a drifter without family ties, while the victim had a large family that the police wanted to mollify by arresting someone for the murder.