854 So.2d 1255 (2003)
Lloyd Chase ALLEN, Appellant,
v.
STATE of Florida, Appellee.
Lloyd Chase Allen, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-371, SC02-1079.
Supreme Court of Florida.
July 10, 2003.
Rehearing Denied September 8, 2003.
*1257 Neal A. Dupree, Capital Collateral Regional CounselSouth, Dan D. Hallenberg, Assistant CCRC-S, and Kenneth M. Malnik, Assistant CCRC-S, Office of Capital Collateral Regional CounselSouth, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Lloyd Chase Allen, an inmate under sentence of death, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm the denial of Allen's postconviction motion and deny the petition for habeas corpus.

I. FACTS[1]
Allen met the victim, Dortha Cribbs, at a truck stop in Atlanta. Allen and Cribbs traveled to Cribbs's vacation home in Summerland Key, Florida. On the way, they stopped in Bunnell, Florida, so that Cribbs could sell a trailer she owned there. Cribbs received $4100 in hundred-dollar bills for the trailer. Allen witnessed the transaction. At 11 a.m. the next morning, a man working across the street from Cribbs's Summerland Key house saw Allen leave and re-enter the home. Between 12:30 and 1 p.m., a real estate agent who managed Cribbs's property found her lifeless body in the house. There were no signs of forced entry. The contents of her purse were scattered across the bed. The $4100 was missing, as were Allen and Cribbs's car.
A taxi driver testified that he picked Allen up at the Buccaneer Lodge Tiki Lounge between 12:30 and 12:45 p.m. on the day Cribbs's body was discovered. Allen paid the fare with a hundred-dollar bill. Cribbs's car was later found abandoned at the Buccaneer Lodge.
Allen was convicted of first-degree murder and grand theft of an automobile. The jury recommended a sentence of death by an 11-1 vote. The trial court followed the jury's recommendation, finding three aggravating factors and two mitigating factors.[2] This Court affirmed Allen's conviction and sentence. Allen v. State, 662 So.2d 323, 332 (Fla.1995).
Allen filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. The court denied the motion without an evidentiary hearing. This appeal and petition for writ of habeas corpus followed.

II. 3.850 APPEAL

Allen raises 18 claims, including subparts.[3] We summarily affirm the trial *1258 court's denial of 16 of his claims because they are procedurally barred[4] or lack merit.[5] We address only claims 1 and 5, asserting a Brady violation concerning hairs found in or on the victim's hand and ineffective assistance of counsel for advancing a suicide theory at trial.

A. Brady Claim

Allen asserts that he is entitled to an evidentiary hearing regarding the alleged violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Allen alleges that the State violated Brady by withholding the result of a hair analysis performed on two hairs found in the victim's hand. The analysis excluded Allen but not the victimas the source. Allen claims that a reasonable probability exists that the outcome would have been different had the evidence been disclosed.
Because the trial court did not hold an evidentiary hearing, we must examine each claim to determine if it is legally sufficient, and, if so, whether the record refutes it. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). However, "[a] defendant may not simply file a motion for postconviction relief containing *1259 conclusory allegations ... and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record...." Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). The defendant must allege specific facts that, if accepted as true, establish a prima facie case that (1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). We review each of these elements in turn.
We first examine whether the evidence was favorable to Allen. Evidence is favorable to an accused if it is either exculpatory or impeaching. Strickler, 527 U.S. at 280, 119 S.Ct. 1936. Whether evidence is exculpatory or impeaching is a question of fact that can be resolved by an evidentiary hearing. See Way v. State, 630 So.2d 177, 178 (Fla.1993). Here, Allen alleges that the result of the hair analysis was favorable because it excluded him as the source of the two hairs. Because the record does not refute this assertion, we accept it as true for purposes of this appeal. See Freeman, 761 So.2d at 1061.
We next consider whether the State suppressed the evidence. To comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case," Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), and to disclose that evidence if it is material. United States v. Agurs, 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Whether the State suppressed evidence is a question of fact that can be resolved by an evidentiary hearing. See Way, 630 So.2d at 178. Again, because the trial court did not conduct an evidentiary hearing, we must accept Allen's allegations to the extent the record does not refute them. Freeman, 761 So.2d at 1061. Allen alleges that the State withheld an FDLE report that contained the result of the hair analysis. Because the record does not refute this fact, we accept it as true for purposes of this appeal. Id.
The State argues that inherent in the suppression prong of Brady is a requirement that the defendant could not have obtained the evidence through due diligence. It argues that it did not suppress the results of the hair analysis because Allen knew that the State had performed such an analysis. A defendant's knowledge that the State submitted evidence for testing, however, does not create a duty to inquire further. See Hoffman v. State, 800 So.2d 174, 179 (Fla.2001) (noting that the State has the burden "to disclose to the defendant all information in its possession that is exculpatory"). The defendant's duty to exercise due diligence in reviewing Brady material applies only after the State discloses it. In Maharaj v. State, 778 So.2d 944 (Fla.2000), on which the State relies, we held that the defendant was aware of a briefcase that the State had returned to the victim's family and could have compelled production through a subpoena duces tecum. Here, the State itself retained possession of the hair analysis, and while Allen was aware that the State was conducting such an analysis, he was never informed of the results. Brady does not require that the defendant compel production of exculpatory material, or even that a defendant remind the State of its obligations. Once the State obtained the results of the hair analysis, it was required to disclose them to the defendant.
*1260 Finally, we determine whether the State's failure to disclose this evidence prejudiced Allen. To satisfy this prong of Brady, a defendant must show that the suppressed evidence was material. Way, 760 So.2d at 912-13. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 280, 119 S.Ct. 1936 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)) (emphasis added). The United States Supreme Court has defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also Bagley, 473 U.S. at 682, 105 S.Ct. 3375 (expressly applying the Strickland formulation of "reasonable probability" to Brady cases).
Whether evidence is "material" for Brady purposes is a mixed question of law and fact subject to independent review. Way, 760 So.2d at 913. Therefore, this Court must "determine `whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.'" See State v. Huggins, 788 So.2d 238, 243 (Fla.2001) (quoting Maharaj, 778 So.2d at 953).
Here, the result of the hair analysis could not reasonably place the case in such a different light as to undermine confidence in the verdict. Although the hair analysis excluded Allen as the source, it did not exclude the victim; and due to contamination, the two hairs cannot be examined further. Thus, the analysis neither supported nor negated Allen's argument that an unidentified third person committed the murder.
This case is distinguishable from Hoffman, 800 So.2d at 179, in which we ordered a new trial after determining that the evidence the State withheld placed the case in a different light as to undermine the confidence in the verdict. In Hoffman, the State also failed to disclose the result of the analysis of hairs found clutched in the victim's hand. Unlike the case here, however, in Hoffman the analysis not only excluded the defendant as the source of the hair, but also excluded the victim and the codefendant. Id. at 179. As we noted in that case:
Whether Hoffman was in fact [at the crime scene] was an important issue that the jury had to resolve. Therefore, any evidence tending to either prove or disprove this fact would be highly probative. Hair evidence found in the victim's clutched hand could tend to prove recent contact between the victim and a person present [at the crime scene] at the time of her death. With the evidence excluding Hoffman as the source of the clutched hair, defense counsel could have strenuously argued that the victim was clutching the hair of her assailant, but that assailant was not Hoffman.
Id. at 180. Here, two hairs were found in or on the victim's handnot clutched in it. In addition, it is undisputed that Allen was present at the scene shortly before the victim's death. He hailed a taxi from the Buccaneer Lodge shortly after the victim's death, and the victim's car was later found at the Buccaneer Lodge. Allen paid the taxi driver with a hundred-dollar bill. The jury concluded that Allen killed the victim, stole her $4100, fled with her car to the Buccaneer Lodge, abandoned the car there and continued his getaway in a taxi. The fact that two hairs found in or on the victim's hand did not belong to Allen does not place the case in such a different light as to undermine confidence in the verdict.

*1261 B. Ineffective Assistance of Counsel

Allen also claims trial counsel was ineffective for suggesting to the jury that the victim may have committed suicide. Claims of ineffective assistance of counsel must satisfy the two-pronged Strickland standardi.e., that counsel's performance was deficient and that the deficient performance prejudiced the defendant. 466 U.S. at 687, 104 S.Ct. 2052. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Id. at 698, 104 S.Ct. 2052. Therefore, both components are subject to independent review. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999). In Strickland, however, the Court noted:
[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.
Id. at 697, 104 S.Ct. 2052. Because we hold that Allen fails to establish prejudice, we do not address whether his counsel's performance was deficient.
To establish prejudice under Strickland, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id. Allen cannot meet this standard.
Although trial counsel did question the medical examiner about the possibility of suicide, such questioning was only a small part of an overall defense that Allen did not commit the murder. Consistent with this defense, counsel attempted to establish reasonable doubt by demonstrating that the State conducted a cursory and error-prone investigation. Counsel showed that (1) the crime scene technician did not send the medical examiner the knife found at the scene for comparison with the victim's wounds; (2) the knife was not examined for rag or fiber traces; (3) blood found in the sink was never tested; and (4) the medical examiner initially overlooked the fact that the victim may have been tied. Counsel also exposed that, in a previous case, the medical examiner ruled that a stab-victim had died of drowning. Counsel further established that the medical examiner summarily ruled out suicide as a cause of death even though it would have been medically possible for the victim to have stabbed herself. Counsel used the suicide theory merely to illustrate his argument about the superficial nature of the State's investigation. Although this particular illustration may not have helped Allen's cause, it did not undermine it either. Therefore, there is no reasonable probability that but for counsel's suggestion that the victim committed suicide, the result of the proceeding would have been different.

III. HABEAS CORPUS CLAIM

Allen raises two claims in his petition for writ of habeas corpus. He first claims that his waiver of mitigation precludes us from conducting an adequate proportionality review. Allen raised this same claim on direct appeal, see Allen, 662 So.2d at 331, and cannot raise it again now. *1262 See Smith, 445 So.2d at 325 ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Allen also claims that Florida's capital sentencing scheme is unconstitutional in light of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We recently rejected such an argument in Doorbal v. State, 837 So.2d 940, 963 (Fla.2003). Moreover, one of the aggravating factors in this case was that the murder was committed while Allen was under a sentence of imprisonment. Such an aggravator need not be found by the jury. Cf. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that the fact of a prior conviction need not be submitted to a jury for determination). Therefore, we deny both claims.

IV. CONCLUSION

We affirm the trial court's summary denial of Allen's 3.850 motion for postconviction relief and deny the petition for habeas corpus.
It is so ordered.
WELLS, PARIENTE, QUINCE and CANTERO, JJ., and SHAW, Senior Justice, concur.
PARIENTE, J., concurs specially with an opinion.
LEWIS, J., concurs in result only.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
PARIENTE, J., specially concurring.
Although I do not concur fully in the separate opinion of Chief Justice Anstead, I am in accord with him on one significant point. I agree that the "sentence of imprisonment" aggravator contained in section 921.141(5)(a), Florida Statutes (2002), does not fall within the "prior-conviction" exception to the requirement of a jury finding of the existence of any fact necessary to qualify the defendant for an enhanced penalty, recognized in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and extended to the death penalty in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Neither the "sentence of imprisonment" aggravator nor the other two aggravators found by the trial courtpecuniary gain and HACrely solely on the existence of a prior conviction.
Further, I disagree with any suggestion in the majority opinion that this Court's decision in Doorbal v. State, 837 So.2d 940 (Fla.2003), settled the issue of the constitutionality of Florida's capital sentencing statute after Ring in general, or supports denial of relief in this case in particular. The majority in Doorbal relied in part on the plurality opinions in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 564, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), in concluding that Doorbal was "likewise not entitled to relief on this claim." 837 So.2d at 963. The majority also relied on the prior violent felony conviction aggravator based on contemporaneous crimes on which Doorbal was charged by indictment and found guilty by a unanimous jury. See id. Unlike Doorbal, Bottoson, and King, this case does not involve a prior violent felony aggravating circumstance that rests on the mere existence of a prior conviction.
Thus, in my view, Ring and the "inviolate" constitutional right to trial by jury[6] would require a unanimous advisory sentence of death for affirmance of the death *1263 sentence if this were Allen's direct appeal. See Butler v. State, 842 So.2d 817, 835 (Fla.2003) (Pariente, J., concurring in part and dissenting in part). However, because we have not yet as a Court determined whether Ring has any applicability to Florida's death penalty scheme, or if so, whether any aspect of that holding would be retroactive to cases already final, I concur in the affirmance of the trial court's order denying postconviction relief and in the denial of the petition for a writ of habeas corpus.
ANSTEAD, C.J., concurring in part and dissenting in part.
I concur in the majority opinion in all respects except for its discussion of the Ring issue.[7] The majority labels the existence of the "under sentence of imprisonment" aggravating circumstance as a means by which we may reject a Ring claim. Although Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), may have held that a jury does not need to find the existence of the bare fact of a prior conviction, the aggravating circumstance in the instant case was that "the murder was committed while under a sentence of imprisonment based upon Allen's escape from a work release program in Kansas." Allen v. State, 662 So.2d 323, 327 (Fla.1995). I do not believe that the Supreme Court in Apprendi or Ring intended this type of aggravating circumstance to fall under the exception for prior convictions.
Moreover, even if this aggravating circumstance did not need to be found by the jury, the fact remains that the judge in this case found two other serious aggravating circumstances and utilized them in imposing the death sentence. Specifically, the judge found that the murder was heinous, atrocious, or cruel (HAC) and that the murder was committed for pecuniary gain. HAC is, of course, one of the most serious aggravating circumstances set out in the statutory sentencing scheme. See Larkins v. State, 739 So.2d 90, 93 (Fla. 1999). Because these two aggravating circumstances were clearly found by the judge, they are clearly not "exempt" from Ring `s requirement that a jury must conduct the factfinding necessary to impose the death sentence. Hence, they should not be utilized in imposing the death sentence.
In effect, the majority reaches the conclusion that the single "exempt" aggravating circumstance is still valid under Ring, even if the other two circumstances no longer are because the facts necessary to prove them were found by a judge. According to the majority, this single aggravating circumstance now suffices to uphold the death sentence. In our previous opinion, we recognized that the trial judge's finding of all three aggravating circumstances was crucial to the judge's decision to impose the death sentence and in our conclusion that the death penalty in this case was proportional. Allen, 662 So.2d at 331. It would be ironic, indeed, to construe a decision (Ring), which holds that a death sentence may not be based upon findings made solely by a trial court, to permit the sentence here where, indeed, two serious aggravating circumstances found by the judge alone were used to impose the death penalty.
NOTES
[1] The facts are taken from our opinion on direct appeal. See Allen v. State, 662 So.2d 323, 325-26 (Fla.1995).
[2] The aggravating factors were that the murder was committed while under a sentence of imprisonment; committed for pecuniary gain; and especially heinous, atrocious or cruel. The mitigating factors were Allen's family background and service in Vietnam.
[3] Allen alleges: (1) a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), concerning hairs found in the victim's hand; (2) a Brady violation concerning an FDLE report that indicated Allen's fingerprints were not found in the victim's car; (3) a Brady violation concerning a report of the Florida Department of Law Enforcement (FDLE) that indicated a contamination problem with some of the evidence sent for testing; (4) ineffective assistance of counsel for failing to request a Frye hearing; (5) ineffective assistance of counsel for advancing a suicide theory; (6) ineffective assistance of counsel for failing to impeach Larry Woods; (7) ineffective assistance of counsel for failing to elicit the testimony of Tania McLean; (8) an invalid waiver of mitigation because counsel did not conduct any investigation into mitigation; (9) an invalid waiver of mitigation because the trial court did not inquire into the decision to waive mitigation; (10) an arbitrary and capricious sentence under the Eighth Amendment because counsel failed to investigate and discover any mitigation; (11) a denial of competent mental health assistance; (12) innocence of the death penalty; (13) ineffective assistance of counsel for failing to challenge the State's evidence; (14) ineffective assistance of counsel for failing to object to jury instructions and comments to the jury by the prosecutor that unconstitutionally diluted the jury's role in sentencing; (15) that the rules prohibiting interviewing jurors are unconstitutional; (16) that Florida's capital sentencing statute is unconstitutional; (17) denial of effective assistance of postconviction counsel by the lack of funding and unprecedented workload of Capital Collateral Regional Counsel, Southern Region (CCRC South); and (18) deprivation of a fair trial due to procedural and substantive errors as a whole.
[4] Claims 8, 9 and 10 were raised on direct appeal. See Allen, 662 So.2d at 328-31. See also Smith v. State, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Claims 14, 15, and 16 should have been raised during the direct appeal. Bruno v. State, 807 So.2d 55, 70 (Fla.2001) (challenges to penalty-phase jury instructions should be brought on direct appeal) (claim 14); Hoffman v. State, 800 So.2d 174, 178 n. 3 (Fla.2001) (challenges to comments on the ground that they dilute the jury's sense of responsibility in sentencing should be raised on direct appeal) (claim 14); Rose v. State, 774 So.2d 629, 637 n. 12 (Fla.2000) (claims challenging the constitutionality of the rules governing juror interviews should be brought on direct appeal) (claim 15); Arbelaez v. State, 775 So.2d 909, 919 (Fla.2000) (challenges to the constitutionality of Florida's death penalty scheme should be raised on direct appeal) (claim 16). To the extent these claims allege ineffective assistance of counsel, they are barred nonetheless. Woods v. State, 531 So.2d 79, 82 (Fla.1988) ("[C]ouching a [procedurally] barred claim in terms of ineffective assistance of counsel will not revive such a claim.").
[5] Claims 2, 3, 4, 6, 7, and 11 lack merit because Allen was not prejudiced by the alleged errors. Claim 12 lacks merit because Allen has not alleged that all of the aggravating circumstances supporting his death sentence are invalid and this Court already conducted a proportionality review on direct appeal. Claim 13 lacks merit because Allen was not prejudiced by counsel's performance in the guilt phase and he represented himself during the penalty phase. Claim 18 lacks merit based on the disposition of Allen's other claims.
[6] Art. I, § 22, Fla. Const.
[7] As Justice Pariente notes in her separate opinion, the Court's decision in Doorbal v. State, 837 So.2d 940, 963 (Fla.2003), provides no guidance as to why we may reject the defendant's Ring claim.